**Nancy THOMPSON, Individually and as Independent Executrix of the Estate of Donald Marshall Thompson, Appellant,**

v.

**Leonette MAYES, Individually and as Independent Executrix of the Estate of Jo B. Thompson, Appellee.**

**No. 11–85–267–CV.**

Court of Appeals of Texas, Eastland.

April 3, 1986.

Rehearing Denied April 24, 1986.

Curtis L. Brown, Dallas, for appellant.

Garry Lewellen, Martin L. Peterson, McMillan & Lewellen, Stephenville, for appellee.

1. TEX.REV.CIV.STAT.ANN. art. 5526 (1979), now codified at TEX.CIV.PRAC. & REM.CODE

Opinion

McCLOUD, Chief Justice.

This is an appeal from a suit to impose a constructive trust on the assets which passed to Donald Marshall Thompson (Don Thompson) under the will of his father, Jo B. Thompson. The other devisee under Jo B. Thompson's will is his sister, Leonette Mayes. On December 19, 1984, Mrs. Mayes brought this suit alleging that a constructive trust should be imposed upon the assets that Don Thompson received under his father's will. Don Thompson committed suicide on January 16, 1985, and Nancy Thompson (Don Thompson's mother and the former wife of Jo B. Thompson) was substituted as defendant both individually and as independent executrix under her son's will. The jury found that on or about November 12, 1982, Don Thompson "intentionally and wrongfully caused the death of Jo B. Thompson by shooting him with a gun." A judgment imposing the constructive trust was rendered for plaintiff. Defendant appeals. We affirm.

Defendant, Mrs. Thompson, argues in her first point of error that the trial court erred in overruling her motion for judgment non obstante veredicto because this suit was barred by limitations. We disagree.

Defendant contends that the two-year limitation period prescribed in Article 5526(5) [1] applies in this case. The applicable portions of this statute provide:

There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

\* \* \* \* \* \*

5. Action for injury done to the person of another where death ensued from such injury; and the cause of action shall be considered as having accrued at the death of the party injured.

sec. 16.003 (Vernon Pamph.1986).

A suit to impose a constructive trust is not an "[a]ction for injury done to the person of another"; rather, it is an action in equity to prevent unjust enrichment of a person who has wrongfully acquired property. *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1977); *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559 (1948). When the proven circumstances show that the holder of the legal title may not in good conscience retain the beneficial interest, then equity converts him into a trustee. *Pope v. Garrett*, supra; *Parks v. Dumas*, 321 S.W.2d 653 (Tex.Civ.App.—Fort Worth 1959, no writ).

In her second and third points of error, defendant contends that plaintiff's suit was barred because: (1) as a matter of law, plaintiff waived her right to file this suit for constructive trust by entering into an "Agreement as to Finality of Judgment"[2] in a prior suit to probate the will of Jo B. Thompson; and (2) as a result of her entering into the aforementioned agreement, plaintiff had unclean hands which was a bar to her suit in equity.

The "Agreement as to Finality of Judgment" was signed by Don Thompson and plaintiff. The agreement was made a part of the record in Cause No. 16,230, which was a suit to probate Jo B. Thompson's will by bill of review in the 266th District Court of Erath County. The judgment probating the will and the agreement as to its finality were signed December 19, 1984. The instant case was filed later that same day.

Nowhere in the aforementioned agreement is there a reference to either party's right to file a subsequent lawsuit involving matters not related to the probate of Jo B. Thompson's will. The agreement contains no language waiving the right to seek the establishment of a constructive trust on the assets received under the will. The agreement waives the right to appeal and makes the probate judgment final. Defendant's second point of error is overruled.

With regard to the unclean hands contention, the legal title of the assets passed to Don Thompson by virtue of his father's will. Plaintiff agreed that the judgment probating the will would become final and that she would not seek to disturb the judgment probating the will by appeal or otherwise. She has not sought to do so. Plaintiff has employed an equitable proceeding against the holder of the legal title for the wrong done and has impressed "a trust on the property in favor of the one who was in good conscience entitled to it." *Pope v. Garrett*, supra. It has not been shown that plaintiff's hands were unclean. Defendant's third point of error is overruled.

In her fourth point of error, defendant argues that plaintiff was not entitled to

---

2. The text of this agreement provides that:

AGREEMENT AS TO FINALITY OF JUDGMENT

The foregoing judgment having this day been signed by all parties and the Judge of the 266th Judicial District Court, it is hereby agreed by and between LEONETTE MAYES and DON MARSHALL THOMPSON, each for his or her respective interests, that neither of them shall have nor exercise, and they each now waive, any right to file a motion for new trial or rehearing of this proceeding or to apply for a statutory bill of review at any time respecting same or to perfect or prosecute any appeal or writ of error therefrom, so that this judgment shall be binding upon the parties thereto continuously from this day forward.

It is expressly understood and agreed that the terms of this agreement are contractual and not merely recitals and that the agreements herein contained and the consideration give by DON MARSHALL THOMPSON and accepted by LEONETTE MAYES is to compromise alleged doubtful and disputed claims, avoid litigation, and buy peace, and that nothing contained herein or in the JUDGMENT PROBATING WILL ON BILL OF REVIEW, executed of even date herewith, shall be construed as an admission of liability or an admission against interest, all such liability being expressly denied by DON MARSHALL THOMPSON.

Each party further represents that this instrument is signed of his or her own free accord without reliance on any representation of any kind or character not expressly set forth herein.

s/Leonette Mayes
LEONETTE MAYES
s/Don Marshall Thompson
DON MARSHALL THOMPSON

have a constructive trust imposed under the facts and circumstances of this case. Defendant contends that the provisions of TEX.CONST. art. I, sec. 21 and TEX. PROB. CODE ANN. sec. 41(d) (Vernon 1980) provide that not even murder or suicide would have caused Don Thompson to forfeit his share of his father's estate. Therefore, since Don Thompson was not indicted for his father's murder and since the evidence linking him to his father's death is circumstantial, the imposition of a constructive trust in this case would be an inappropriate expansion of this doctrine. We disagree.

 The jury found that Don Thompson intentionally and wrongfully caused the death of his father. There is no challenge to the sufficiency of the evidence to support that finding. Therefore, the fact that the jury's verdict was based on circumstantial evidence is not relevant to the propriety of imposition of the constructive trust.

Application of the settled law in this State to this set of facts permits the imposition of a constructive trust. As stated by the court in *Bounds v. Caudle*, supra at 928:

Texas courts have taken the position that the law will impose a constructive trust upon the property of a deceased which passed either by inheritance or by will if the beneficiary willfully and wrongfully caused the death of the deceased.

Defendant's fourth point of error is overruled.

In Point of Error No. 5, defendant contends that plaintiff's case is barred by res judicata and by the doctrine of merger and bar. She argues that the constructive trust cause of action should have been included in the bill of review suit to probate Jo B. Thompson's will[3] and that the judgment probating the will distributed the estate to Don Thompson and plaintiff; therefore, the prior suit was a final disposition of the assets, and it barred any subsequent suits concerning those assets.

The Texas Probate Code expressly provides that district courts have jurisdiction over suits to apply constructive trusts. TEX.PROB. CODE ANN. sec. 5A(b) (Vernon 1980). Defendant cites the case of *Abbott Laboratories v. Gravis*, 470 S.W.2d 639 (Tex.1971), as support for her argument that any action which could have been brought in the proceeding to probate the will should have been litigated in that proceeding. *Abbott* is clearly distinguishable. In *Abbott*, the plaintiff's original suit was based on negligence in preparing and furnishing a drug to the plaintiff. In a subsequent suit, which the court held was barred by res judicata, the plaintiff pled products liability as the theory of recovery for the same alleged injuries arising from the same incident involving the drug. The court stated at page 642 that:

[A] party cannot relitigate matters which he might have interposed, but failed to do so, in an action between the same parties or their privies in reference to *the same subject matter*. (Emphasis added)

A suit to probate a will does not involve the "same subject matter" as a suit to impose a constructive trust.

 The bill of review suit to probate the will dealt with the authenticity of the will and proof that the testator was dead. The instant suit involves the question of whether Don Thompson intentionally and wrongfully caused his father's death. The theory of recovery, the operative facts, and the measure of recovery are all different in this case. Therefore, this suit is not barred by res judicata. *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex.1973); *Abbott Laboratories v. Gravis*, supra; *Ogletree v. Crates*, 363 S.W.2d 431 (Tex. 1963); *Moore v. Snowball*, 98 Tex. 16, 81 S.W. 5 (Tex.1904); *Dobbs v. Navarro*, 506 S.W.2d 671 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

In Point of Error No. 6, defendant contends that the trial court abused its discretion in excluding the testimony of a psy-

3. The suit was originally filed in the constitutional county court and later transferred to the district court for disposition of all contested matters.

chologist, Dr. Frank Wichern, regarding his opinion as to Don Thompson's non-involvement in his father's disappearance. We disagree.

Defendant's attorney revealed to the court that he intended to ask Dr. Wichern his opinion concerning whether or not Don Thompson "may have" killed his father. Plaintiff's attorney took Dr. Wichern on voir dire to determine the basis of any opinion proffered by the doctor. Dr. Wichern testified that he had no personal knowledge of or contact with either Jo B. Thompson or Don Thompson. After Don Thompson's suicide, Dr. Wichern talked to six people for less than one hour each concerning their relationships with Don Thompson. Some of these people did not have a relationship with Don Thompson at the time of his father's disappearance. One person had neither known nor had any personal contact with Don Thompson. Dr. Wichern reviewed both Don Thompson's high school transcript and a summary prepared by his mother, the defendant, of his growth and development. Dr. Wichern listened to the tapes made by Don Thompson before he shot himself. The only other knowledge that Dr. Wichern had of Jo B. Thompson's disappearance was what he had read in *The Dallas Morning News*. Dr. Wichern testified that he compiled all of this information into a "psychological autopsy" in an effort to determine Don Thompson's state of mind at the time of his father's disappearance.

Jo B. Thompson was last seen more than two years prior to this trial. Defendant's attorney revealed to the court that he intended to ask Dr. Wichern his opinion as to Don Thompson's state of mind on the day his father disappeared. This opinion was based on information gathered after Don Thompson's suicide. Dr. Wichern testified that psychological autopsies have been used by psychologists in forming opinions as to the state of mind of alleged suicide victims at the time of their death. In those cases, the issue was whether the person committed suicide, not whether the decedent may have killed another person two years earlier.

Plaintiff's attorney inquired about the purpose, acceptance, and reliability of an opinion based on a psychological autopsy when used to determine a person's state of mind at a prior time. Pertinent portions of Dr. Wichern's testimony are:

Q. Has [a psychological autopsy] ever been used to hypothesize what the state of mind was at a prior time?

A. I have no personal knowledge of that, I suspect it could be.

Q. That's what you're attempting to do in this case; is that not correct?

A. Yes, that's right.

Q. You're not aware that it has ever been attempted before, though?

A. Not to my knowledge—personal knowledge.

■ At the conclusion of the voir dire, plaintiff's attorney objected to the admission of Dr. Wichern's testimony on the grounds that "there is not an underlying technical or scientific principle that it is sufficiently reliable for his testimony to be of assistance to the jury" and the testimony was not permitted by Rule 702 of the Texas Rules of Evidence. Under TEX.R. EVID. 702, an expert's testimony should not be admitted if it would be more likely to prejudice or confuse than to assist the jury. Therefore, an expert's opinion should be based on an existing body of scientific, technical, or other specialized knowledge that is pertinent to the facts in issue. The underlying technical or scientific principle should be sufficiently reliable for the testimony of the witness to be of assistance to the jury. Sutton, *Article VII: Opinions and Expert Testimony*, 20 HOUS.L.REV. 445, 459 (1983 TEX.R.EVID. HANDBOOK).

■ The trial judge has broad discretion in determining issues concerning the general admissibility of evidence. TEX.R.EVID. 104(a). This rule is consistent with prior Texas law regarding the trial court's preliminary determination of fact as to the admissibility of expert testimony; therefore, the trial court's decision will not be

overruled unless an abuse of discretion is shown. *Bolstad v. Egleson,* 326 S.W.2d 506 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.); *United States v. Schmidt,* 711 F.2d 595 (5th Cir.1983). The trial court did not abuse its discretion in refusing to admit this testimony, especially after the expert conceded that he did not know of any other instance where a psychological autopsy had been used in this manner.

Moreover, the issue to be decided in this case is whether Don Thompson intentionally and wrongfully caused the death of his father. Under the facts of this case, the jury did not need the assistance of scientific, technical, or specialized knowledge to decide this question. The admission of this testimony would not have assisted the jury in making inferences regarding the fact issue more effectively than the jury could do so unaided. *Holloway v. State,* 613 S.W.2d 497, 501 (Tex.Cr.App.1981); Sutton, *Article VII: Opinions and Expert Testimony,* 20 HOUS.L.REV. 445, 451–461 (1983 TEX.R.EVID. HANDBOOK). Defendant's sixth point of error is overruled.

Defendant argues in Point of Error No. 7 that the trial court erred in excluding Don Thompson's alleged suicide tapes. She argues that the tapes were admissible under either TEX.R.EVID. 803(3), 804(b)(2), or 804(b)(3)(B), or under all three.

■ Rule 803(3) is an exception to the hearsay rule which permits the admission of a "statement of the declarant's then existing state of mind." Don Thompson's state of mind more than two years after the date his father disappeared is not material to any issue involved in this case. Therefore, even if the tapes technically fall within an exception to the hearsay rule, they still are not admissible because they are not relevant. TEX.R.EVID. 401, 402;

Wellborn, *Article VIII: Hearsay,* 20 HOUS.L.REV. 477, 514 (1983 TEX.R.EVID. HANDBOOK).

■ These tapes were also not admissible as a dying declaration under Rule 804(b)(2). Under this rule, dying declarations which concern the cause or the circumstances of what the declarant believed to be his impending death are admissible as exceptions to the hearsay rule. The cause or circumstances of Don Thompson's death were not relevant to this case, and the tapes were properly excluded. TEX.R. EVID. 401, 402.

■ Defendant also contends that the tapes were admissible under TEX.R.EVID. 804(b)(3).[4] This rule concerns statements of personal or family history and excepts certain of these statements from the hearsay prohibition. Defendant contends that the tapes are admissible because the statements on the tapes concern the death of a person to whom Don Thompson was related by blood, i.e., his father. We disagree.

On the portions of the tapes quoted in defendant's brief, Don Thompson denies any involvement in or knowledge of his father's disappearance. Consequently, the proffered statements do not concern the "death" of Jo B. Thompson and were properly excluded.

Defendant next contends that Don Thompson's responses to questions propounded to him by the examiner during a polygraph examination were improperly excluded from evidence. Defendant again relies on Rule 804(b)(3) as basis for the admission of this testimony.

■ The answers to the questions asked by the polygraph examiner indicate that Don Thompson did not know any of the details about his father's disappearance

---

4. TEX.R.EVID. 804(b)(3) states that:
 (b) Hearsay exceptions. The following are not excluded if the declarant is unavailable as a witness—
 (3) Statement of personal or family history. (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood....

or did not even know if his father was dead. Therefore, these statements do not concern the "death" of his father and, in fact, tend to show that Don Thompson could not make any statement about his father's death because he did not know anything about it. Therefore, the statements were properly excluded.

In her final point of error, defendant urges that the trial court abused its discretion in refusing to grant her motion to transfer venue under TEX.R.CIV.P. 257 and 258. She contends that under Rule 258 the controverting affidavit submitted by plaintiff is insufficient to attack the affidavit that she filed previously in support of her motion. We disagree.

■ Plaintiff's affiant, Mr. Oxford, swore in his affidavit that:

> I do not believe the means of knowledge whereby JOHN B. FOUTS, HOSEA WARREN, MARY A. WESTBROOK and NANCY J. THOMPSON have formed their opinions concerning a prejudice against DONALD MARSHALL THOMPSON is accurate. In my opinion his estate and its beneficiaries can obtain a fair and impartial trial on the matters in controversy in Erath County, Texas.

These statements are sufficient to raise and frame the issue of whether or not an impartial trial could be had in Erath County. *Governing Board v. Pannill*, 659 S.W.2d 670, 688–689 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.).

■ Therefore, the question now becomes whether or not the trial judge, after considering the evidence produced at the hearing, abused his discretion in refusing to transfer venue. The evidence produced by defendant at the hearing was controverted by plaintiff's evidence. Both sides produced competent testimony to support their position. We find no abuse of discretion in refusing to transfer the case. *Governing Board v. Pannill*, supra. All points of error are overruled.

The judgment of the trial court is affirmed.