**Danny Gene DECKER, Appellant,**

v.

**Cynthia Lynn [Decker] HATFIELD, Appellee.**

No. 11–89–239–CV.

Court of Appeals of Texas, Eastland.

Nov. 8, 1990.

Rehearing Overruled Dec. 6, 1990.

Martin L. Peterson, Garry Lewellen, McMillan & Lewellen, Stephenville, for appellant.

Gary Connally, Hamlin, for appellee.

OPINION

DICKENSON, Justice.

The sole issue on appeal in this child custody case is whether the trial court erred in permitting an expert witness to tell the jury that the child told him during their interviews that "he wanted to live with his mother."

Danny Gene Decker and Cynthia Lynn [Decker] Hatfield were divorced on May 4, 1987, and pursuant to their agreement were appointed joint managing conservators of their son, Daniel Gene Decker, who was born on February 11, 1984. Each parent had the child for three and one-half days each week. Both parents married other spouses, and the joint conservatorship arrangement became unworkable after the child's mother and stepfather moved to Arizona. Both parents filed motions to modify the original decree, asking to be appointed as sole managing conservator of their young son. There are no disputes over the child-support obligations and the visitation provisions. Based upon a jury's verdict, the trial court appointed the mother as sole managing conservator. The father appeals. We affirm.

After lengthy testimony (by both parents, both stepparents, numerous relatives and friends of both parties) had shown that the father and mother are both suitable parents and that the child will have a good home with either of them, the mother's lawyer called Mark Douglas Cunningham, Ph.D., a licensed psychologist, to testify as an expert witness. Dr. Cunningham's testimony, the father's objection, and the court's rulings are shown below:

Q: How do you feel about Daniel as far as stability, and happiness, and his needs as far as what parent would best provide those?

A: In answer to the first part of the question, I see Daniel as—as being a reasonably well adjusted child. He shows evidence of having been well cared for by his parents.... He is aware that both of his parents seek custody of him and seems to feel some sense of being torn between them. He also expresses a desire to live with one parent at this point and very clearly expresses a preference to live with his mother. He's not able to describe why that is very well—

FATHER'S ATTORNEY: —Excuse me, Your Honor, excuse me, I'm going to object that these statements are totally hearsay, Your Honor, from what may

have been—occurred between the boy and him as far as what he said.

MOTHER'S ATTORNEY: Your Honor, I believe that there is (sic) accepted methods for experts to use this within their testing if they're generally accepted methods.

THE COURT: I will overrule the objection.

FATHER'S ATTORNEY: May I have a running objection to anything he relates that Daniel told him outside the presence of—

THE COURT: You may have a running objection.

\* \* \* \* \* \*

Q: If he [the child] had any reservations [about leaving his father's home in Texas and moving to his mother's home in Arizona], do you think that he would have mentioned it?

A: I would think so, as I talked to him about that, he seemed to have positive feelings about being with his mother, that seemed to be more related to the experience of being with her than her being in any particular place. As I said, he described multiple positive aspects of being at his dad's house ..., certainly indicated he still wanted to visit with his dad, but would prefer to primarily reside with his mom.

\* \* \* \* \* \*

Q: [W]here do you think this young man wants to be, based upon your interviews?

A: I believe that he wants to live with his mother.

The psychologist was the last witness the jury heard, and the jury deliberated more than six hours before deciding which parent should be appointed as sole managing conservator. The only question submitted to the jury was:

Which parent do you find from a preponderance of the evidence should be appointed as the sole managing conservator of the child, Daniel Gene Decker?

The jury's answer named the mother.

Appellant argues in one point of error that the trial court erred in permitting

TEX.R.CIV.EVID. 705 to be "used as a guise to allow hearsay into evidence." Appellant cites *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361 (Tex. 1987). The Supreme Court stated, supra at 365:

Ordinarily an expert witness should not be permitted to recount a hearsay conversation with a third person, even if that conversation forms part of the basis of his opinion. TEX.R.[CIV.]EVID. 801, 802.

This statement is discussed as shown below in GOODE, WELLBORN & SHARLOT, TEXAS RULES OF EVIDENCE: CIVIL & CRIMINAL § 705.3 (Texas Practice 1988):

This language, contained in dictum and made without reference to Rules 703 and 705, is ill-considered and overbroad. The design of these rules was to allow experts to testify in a way consistent with the manner in which they conduct their professional activities. *If an expert has relied upon hearsay in forming an opinion, and the hearsay is of a type reasonably relied upon by such experts, the jury should ordinarily be permitted to hear it.* Exclusion is proper only when the court finds that the danger that the jury will improperly use the hearsay outweighs its probative value for explanatory purposes. (Emphasis added)

TEX.R.CIV.EVID. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

TEX.R.CIV.EVID. 705 provides:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. *The expert may in any event disclose on direct examina-*

*tion,* or be required to disclose on cross-examination, *the underlying facts or data.* (Emphasis added)

We hold that the trial court did not err in overruling appellant's objection. The expert is entitled to explain the basis for his opinions under Rule 705.

We note that appellant did not seek to exclude this relevant evidence under TEX. R.CIV.EVID. 403 which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 403 gives the trial court discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion in overruling appellant's hearsay objection. See and compare *First Southwest Lloyds Insurance Company v. MacDowell,* 769 S.W.2d 954 at 958 (Tex.App.—Texarkana 1989, writ denied) (Rule 403 "clearly gives the trial court discretion to exclude admissible evidence for a variety of reasons."); *Thompson v. Mayes,* 707 S.W.2d 951 at 956 (Tex.App.—Eastland 1986, writ ref'd n.r.e.) ("The trial judge has broad discretion in determining issues concerning the general admissibility of evidence.").

We also note that appellant did not seek a limiting instruction under TEX.R.CIV. EVID. 105(a) which requires the trial court, upon timely request, to restrict the evidence to its proper scope and to instruct the jury accordingly.

The judgment of the trial court is affirmed.