SVOBODA DRAFT 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-093-CV





LINDA SUE SVOBODA,



 APPELLANT


vs.





MARTIN R. SVOBODA,



 APPELLEE



 




FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT



NO. 90-FL-256, HONORABLE FRED A. MOORE, JUDGE PRESIDING



 





 Linda Svoboda and Martin Svoboda both sought to modify their divorce decree
which named them joint managing conservators of their young son, Travors (also referred to in
the record on appeal as "Travis"). Believing that Martin had sexually abused Travors, Linda had
prevented his court-ordered visitation for approximately eight months before trial. A jury did not
believe Linda's allegations of sexual abuse and found that Martin should be named sole managing
conservator. The court rendered judgment on the verdict, naming Martin managing conservator
and Linda possessory conservator, and held Linda in contempt, with punishment deferred subject
to her compliance with the modification order. The court also granted Linda standard visitation
rights and ordered her to pay child support. 

 Linda appeals, alleging that the trial court erred in: (1) admitting over her hearsay
objection a letter report of a nontestifying psychologist relied upon as the basis for the opinion of
father's expert psychologist, (2) dismissing one juror as "disabled," and (3) excluding opinion
testimony offered by an expert witness seeking to testify for appellant. We affirm the trial court's
judgment.



BACKGROUND



 Linda Svoboda and Martin Svoboda were divorced in January 1989. Although the
parties were appointed joint managing conservators of their young son, Travors, the mother had
primary custody and the right to determine the child's legal domicile, subject to the father's
standard visitation rights. This dispute arose when Linda terminated Martin's visitation rights in
February 1990, based on her unconfirmed suspicions that Martin was sexually abusing Travors. 
She and her family members conspired to make Travors "unavailable" each time that Martin
arrived to exercise his visitation rights. This bi-weekly ritual, involving family members of both
parents, continued until a jury trial was held in Caldwell County in October 1990.

 The jury determined that the joint managing conservatorship was no longer
workable. Linda asked that she be named sole managing conservator and, because of the sexual
abuse, that Martin's visitation be supervised until Travors reached the age of twelve. Martin
asked that Linda be held in contempt for violating his court-ordered visitation rights over an eight-month period; he also argued that given Linda's past behavior he would never see his son unless
he was appointed sole managing conservator. The jury did not believe the allegations of sexual
abuse and apparently did believe that Linda and her family would continue to prevent Martin from
seeing his son. It found that Martin should be appointed sole managing conservator of Travors. 
The trial court rendered judgment on the jury verdict.



ANALYSIS


Admissibility of Data Underlying Expert's Opinion

 Dr. George Parker, psychologist, testified as an expert witness for Martin Svoboda. 
In his opinion there was no evidence of sexual abuse but there was evidence of "parental alienation
syndrome," extreme hostility between divorced or divorcing parents that can lead to false
allegations of sexual abuse in custody disputes. In his opinion, Linda Svoboda's allegations of
sexual abuse were grounded in hostility and not in reality. In arriving at this opinion Dr. Parker
interviewed Travors, Martin, Linda, Martin's new wife, Donna Svoboda, and the paternal
grandparents. He administered a clinical "personality assessment" called the MMPI to some of
these individuals. Dr. Parker also talked with Dr. Muriel Flake, a psychologist who had
previously seen both parents and Travors following the first allegations of sexual abuse. He also
reviewed a letter report prepared by Dr. David King, another psychologist who had been asked
to see Martin and his son to review the allegations of sexual abuse. Additionally, Dr. Parker
testified that he read the deposition of Dr. Deborah Tharinger, appellant's expert witness, who
was asked to evaluate Travors by Travors's treating psychologist, Betty Miles. 

 Dr. Parker testified on direct examination that he took into account Dr. King's
letter report and his discussions with Dr. Flake, both of whom found no evidence of Martin's
sexual abuse of Travors, in formulating his own opinion in this case. Appellant complains of the
admission of Dr. David King's letter report in her first point of error. 

 Dr. King had seen Martin and Travors in the summer of 1989, following Linda's
first allegations of sexual abuse. In addition to interviewing father and son, Dr. King consulted
Dr. Muriel Flake, who had previously had much more extensive interviews with the family and
the extended family, visited in both parents' homes, and conducted various psychological
evaluations. In his letter, Dr. King reported Dr. Flake's conclusion that "she saw no indications
of child abuse in Travis [sic] or his father." He then continued, "During my interactions with
Martin and Travis [sic] I saw nothing in either of them or in their interactions with each other to
suggest that their relationship is anything other than normal and healthy." King concluded,
"While I acknowledge that the above information does not conclusively rule out the possibility of
sexual contact between Martin and his son, I do believe that it may be concluded from this
information that the likelihood of such contact is extremely remote." 

 Linda objected to the admission of Dr. King's report, complaining that it was "full
of hearsay." The trial court said the objection would be sustained unless Dr. Parker testified that
it was normal in formulating his opinions to rely on "letters to lawyers." We note that Dr. King's
report was made in the form of a letter addressed to counsel for Martin Svoboda within days of
the trial. Dr. Parker then testified that during consultations he often relied on statements from
other consulting psychologists or psychiatrists and that it was insignificant whether the statements
were addressed to him or to an attorney when the matter was in litigation. At this point, the trial
court overruled the objection and admitted Dr. King's letter report.

 On appeal, Linda reurges her argument that the letter report contained prejudicial
hearsay and that she was unable to cross-examine either psychologist whose adverse opinions it
contained. Martin points out that Texas Rule of Civil Evidence 703 permits an expert to rely on
facts or data that are not admissible in evidence, if they are "of a type reasonably relied upon by
experts in the particular field in forming an opinion or inferences upon the subject." Tex. R. Civ.
Evid. 703 (Pamph. 1992). Additionally, Rule 705 states, "The expert may in any case expose on
direct examination, or be required to disclose on cross-examination, the underlying facts or data."

 The issue presented is whether Rules 703 and 705, read together, permit a litigant
to introduce otherwise inadmissible evidence through an expert witness if it forms the basis for
that expert's opinion and is of a type reasonably relied upon by experts in that field. Appellee
reads the "may" in Rule 705 to be mandatory; appellant argues that the "may" in Rule 705 has
not extinguished the trial court's discretion in admitting evidence. 

 First we reject appellee's argument that appellant has not preserved error by making
a hearsay objection. See Decker v. Hatfield, 798 S.W.2d 637, 638 (Tex. App. 1990, writ dism'd
w.o.j.); Hall v. Birchfield, 718 S.W.2d 313, 324-25 (Tex. App. 1986), rev'd on other grounds
sub. nom. Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361 (Tex. 1987). We then
review the conflicting interpretations of the effect of Rules 703 and 705 on the admissibility of
otherwise inadmissible evidence. 

 In Birchfield v. Texarkana Memorial Hospital, 747 S.W.2d 361 (Tex. 1987), the
supreme court stated, "Ordinarily an expert witness should not be permitted to recount a hearsay
conversation with a third person, even if that conversation forms part of the basis of his opinion." 
Id. at 365. However, the court found the inadmissible evidence cumulative of other similar
evidence and therefore ruled that any error was harmless. Id. In that cause, the intermediate
appellate court had held that Rule 705 "cannot be used as a guise to use one's own expert witness
to get in hearsay testimony." Hall, 718 S.W.2d at 325. 

 The supreme court's language in Birchfield, and by implication the intermediate
court's as well, has been criticized for failure to consider the import of Rules 703 and 705 on
admissibility:



This language, contained in dictum and made without reference to Rules 703 and
705, is ill-considered and overbroad. The design of these rules was to allow
experts to testify in a way consistent with the matter in which they conduct their
professional activities. If an expert has relied upon hearsay in forming an opinion,
and the hearsay is of a type reasonably relied upon by such experts, the jury should
ordinarily be permitted to hear it. Exclusion is proper only when the court finds
that the danger that the jury will improperly use the hearsay outweighs its
probative value for explanatory purposes.



33 Steven Goode et al., Guide to the Texas Rules of Evidence: Civil and Criminal § 705.3, at 536
(Texas Practice 1988). Accordingly, Rules 703 and 705 do not always require admission of
otherwise inadmissible evidence reasonably relied upon by an expert, but the trial court should
weigh admissibility in light of Rule 403:


Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation
of cumulative evidence. A hearsay objection to evidence reasonably relied upon
by an expert in forming an opinion should ordinarily be overruled, subject to a
determination that the dangers outlined in Rule 403 outweigh the evidence's
probative value.



Tex. R. Civ. Evid. Ann. 403 (Pamph. 1992). 

 In a case substantially on point with the one before us, the court applied Rules 703
and 705 to otherwise inadmissible evidence as the commentators recommend. In Decker a mother
and father, appointed joint managing conservators in their divorce decree, filed motions to modify
a custody arrangement which had become unworkable. The mother's expert witness testified that
he based his opinion of which parent should have custody on the nontestifying child's preference
for where he wanted to live. Over father's hearsay objection, the psychologist was permitted to
disclose the child's preference for living with his mother. The appellate court reviewed the
authorities cited above and concluded that the trial court did not abuse its discretion in overruling
the father's hearsay objection. Decker, 798 S.W.2d at 639. The court was persuaded that the
supreme court's dictum in Birchfield was overly broad, and followed the commentators'
suggestion that hearsay relied upon by an expert should ordinarily be made available to the jury. 
The Decker court noted that the father failed to object that the dangers of stating the child's
custody preference outweighed its probative value under Rule 403 and failed to seek a limiting
instruction that the jury restrict its consideration of the hearsay statement to its proper scope as
data underlying the expert's opinion. Id.

 We concur with the Decker opinion that Rule 705 suggests that the jury should
ordinarily be entitled to hear otherwise inadmissible evidence when an expert witness has
reasonably relied upon it. (1) We agree with appellant that Rule 705 does not eliminate the trial
court's discretion in determining the admissibility of evidence. "The trial judge has broad
discretion in determining issues concerning the general admissibility of evidence." Thompson v.
Mayes, 707 S.W.2d 951, 956 (Tex. App. 1986, writ ref'd n.r.e.). We note that the appellate
court in First Southwest Lloyds Insurance v. MacDowell, 769 S.W.2d 954 (Tex. App. 1989, writ
denied), deferred to the trial court's discretion in excluding the specific details of some data relied
upon by the expert witness in an arson case: 



Moreover, even if we determined that Rule 703 mandated that all facts or data
relied on by an expert were ipso facto admissible, we believe that the trial court
in the exercise of its discretion could exclude these types of matters. Were the
appellate courts to adopt the position urged by First Southwest, then we would
eliminate the trial court's discretion in limiting the admissibility of any evidence
which might be facially admissible. The Texas Rules of Evidence clearly compel
that we not adopt this position.


Id. at 958 (citing Rule 403). 

 We concur with the holdings in Decker and First Southwest that any objection to
inadmissible evidence reasonably relied upon by an expert in forming an opinion should address
the court's discretion to exclude the evidence because the dangers cited in Rule 403 outweigh its
probative value. See Goode, Guide to the Texas Rules of Evidence: Civil and Criminal § 705.3,
at 536. We note that as in Decker, this appellant failed to argue that Dr. King's letter should be
excluded under Rule 403. In light of Rule 705 and its interpretation in the authorities listed
above, we are not persuaded that the trial court abused its discretion in admitting the letter report
of Dr. King. We overrule the first point of error.



Disabled Juror


 In point of error two, Linda Svoboda argues that the trial court erred in dismissing
one juror whose wife's grandmother had died during the trial. The issue of determining when
a juror is disabled is left to the sound discretion of the trial court. Southern Pac. Trans. Co. v.
Peralez, 546 S.W.2d 88, 97 (Tex. Civ. App. 1976, writ ref'd n.r.e.). We have reviewed the
statement of facts and find no suggestion that the trial court abused its discretion in dismissing the
juror under the circumstances set forth in the record. We overrule the second point of error.

 


Exclusion of Laurie Blanton's "Expert" Testimony


 In her final point of error, Linda Svoboda complains of the trial court's failure to
allow the Caldwell County district attorney's investigator, Laurie Blanton, to testify as to whether
the child's statements to her were rehearsed. Appellant's argument fails on two grounds. In the
bill of review, Blanton never identified the subject of Travors's conversation with her that was
allegedly unrehearsed. The record, which is silent on the subject of the child's conversation with
Blanton, is therefore silent as to the relevance of Blanton's testimony. Because appellant's offer
of proof presents nothing of relevance that would have been testified to, nothing is preserved for
review on appeal. Furthermore, the offered testimony was nothing more than an "expert's"
opinion that the child was telling the truth. The issue of the truthfulness of the allegations of
sexual abuse was committed to the jury. A court errs by receiving, over objection, expert
testimony as to the credibility of a child who is alleged to have been sexually abused. "An
expert's opinion about the alleged victim's truthfulness is usually not allowable because it invades
the exclusive province of the jury." Ochs v. Martinez, 789 S.W.2d 949, 957 (Tex. App. 1990,
writ denied) (citations omitted). We overrule point of error number three.



CONCLUSION



 Finding no reversible error, we affirm the judgment of the trial court.

 

 Bea Ann Smith, Justice

[Before Chief Justice Carroll, Justices Aboussie, and B. A. Smith]

Affirmed

Filed: June 17, 1992

[Do Not Publish]
1. We note that appellant does not challenge Dr. Parker's rather troubling testimony that a
psychologist asked to investigate allegations of sexual abuse "reasonably" relies on another
psychologist's letter to a trial attorney written five days before trial, as opposed to a consulting
psychologist's report to another examining psychologist, in forming an opinion as to whether
sexual abuse occurred.