In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-345 CV


____________________



IN RE COMMITMENT OF JOSE SALAZAR






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 06-09-09200-CV






MEMORANDUM OPINION


 The State of Texas filed a petition to civilly commit Jose Salazar as a sexually violent
predator pursuant to Chapter 841 of the Texas Health & Safety Code. See Tex. Health &
Safety Code Ann. §841.001-.150 (Vernon 2003 & Supp. 2008). A jury found that Salazar
was a sexually violent predator who suffers from a behavioral abnormality that makes him
likely to engage in a predatory act of sexual violence. The trial court entered a final
judgment and order of civil commitment, from which Salazar appeals. On appeal Salazar
argues (1) it was error for the court to allow expert-witness testimony that was hearsay within
hearsay and was calculated to inflame the minds of the jurors; (2) the court erred in allowing
hearsay testimony from Clayton regarding statements made by the victims where her notes
of the interviews she conducted with the victims were not produced in discovery; and (3) the
court erred in denying Salazar's request for continuance sought in order to depose the victims
Clayton interviewed. We hold that the trial court's evidentiary rulings were proper and that
the court did not abuse its discretion in denying Salazar's motion for continuance. We affirm
the judgment of the court below. 

BACKGROUND


 On April 30, 2007, a jury trial commenced and the State presented evidence through
several witnesses: A.P. Merillat, Jose Salazar, Dr. Michael Gilhousen, and Dr. Lisa Clayton. 
The State presented evidence of Salazar's two convictions for aggravated sexual assault and
one conviction for burglary of a habitation through the testimony of Merillat, a fingerprint
expert. The State presented testimony from Salazar by video deposition. 

 During his deposition Salazar testified that he was sexually assaulted numerous times
as a minor. He testified that the sexual abuse he experienced caused him to commit his sex
crimes and that his victims were chosen out of revenge. Salazar testified that he had been
addicted to marijuana, alcohol, cocaine, and heroin, and that drugs and alcohol had played
a role in all his prior sexual offenses. Salazar admitted that he was guilty of the prior offense
of burglary of a habitation with the intent to commit sexual assault, but then denied forcing
the victim to have sex with him on that particular occasion. When asked about his other
sexual convictions, Salazar admitted that he was guilty of those offenses. Stating that he was
under the influence of drugs and alcohol when he committed those acts, Salazar denied any
recollection of the details of those events. He testified that he was a vengeful person and that
his victims were chosen because they were related in some way to persons who had sexually
assaulted him. Salazar testified that he began to enjoy forcing sex on women. He
acknowledged that in his last two sexual assault convictions, he pled guilty as part of a plea
bargain agreement where the charges were dropped on other sexual assaults for which he had
been charged. 

 Following Salazar's deposition testimony, the State presented testimony through Dr.
Michael Gilhousen ("Gilhousen"), a psychologist. Gilhousen was under contract with the
State to provide evaluations of sex offenders being considered for civil commitment.
Specifically, Gilhousen was employed to determine whether sex offenders possess a
behavioral abnormality and to assess the level of risk an offender poses for reoffense. 
Gilhousen testified that he diagnosed Salazar with the following: sexual abuse of adult and
sexual abuse of child; polysubstance dependence (meaning he was dependent upon alcohol
and drugs of various types); major depressive disorder by history only, and antisocial
personality disorder. Gilhousen testified that in his opinion Salazar has a behavioral
abnormality as defined by Chapter 841 of the Texas Health & Safety Code, which makes
Salazar more likely than the average sex offender to engage in predatory acts of sexual
violence in the future. 

 The State also presented expert testimony through Dr. Lisa Clayton ("Clayton"), a
board certified forensic pyschiatrist. Clayton testified that she evaluated Salazar and found
that he suffers from a behavioral abnormality. Clayton testified that she diagnosed Salazar
with sexual sadism, pedophilia, and antisocial personality disorder. With regard to Salazar's
sex offender treatment, Clayton testified that the eighteen months of treatment that Salazar
received while incarcerated were not enough to enable him to master the control techniques
relating to his sexual behavior. 

 After the State rested, Salazar made a motion for mistrial and a motion for directed
verdict. Both motions were denied by the trial court. Salazar presented evidence through
one witness, Joe Bixenman. Bixenman testified that he was Salazar's legal guardian around
1979 and told the jury about the problems Salazar had when he was younger. After
Bixenman's testimony, Salazar rested. The jury determined that Salazar suffers from a
behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

INADMISSIBLE HEARSAY TESTIMONY


 The trial court's decision about the admissibility of evidence is subject to an abuse of
discretion standard of review. Dalworth Trucking Co. v. Bulen, 924 S.W.2d 728, 735 (Tex.
App.--Texarkana 1996, no writ). "To obtain a reversal of a judgment based on the admission
of evidence, the appellant must show that the trial court's ruling was in error and that the
error was reasonably calculated to cause and probably did cause the rendition of an improper
judgment." Stam v. Mack, 984 S.W.2d 747, 749 (Tex. App.--Texarkana 1999, no pet.)
(citing Tex. R. App. P. 44.1); see also McCraw v. Maris, 828 S.W.2d 756, 757 (Tex. 1992). 
 At trial, Gilhousen explained that in making his determination as to whether a sex
offender possesses a behavioral abnormality, he considers various risk factors which have
been established to be related to reoffense. The number of risk factors that are present in an
individual are added up to determine their risk of reoffending. On direct examination,
Gilhousen testified that Salazar stated he chose his victims out of revenge. According to
Salazar, all his victims were associated with or had some knowledge of his sexual abuse as
a child, and as a result he was seeking revenge against them. 

 Salazar's revenge motive was an issue at trial because whether Salazar knew his
victims prior to the assault was a relevant risk factor in determining the likelihood that
Salazar would reoffend. Gilhousen explained as follows: 

 [S]ome sex offenders offend, you know, only people within their families or
acquaintances; and certainly they are dangerous people, no question. But if
you're willing to sexually assault or attempt to sexually assault a stranger, well,
then that broadens the number of potential victims that are out there and,
therefore, makes you more risky. . . . 


Gilhousen testified that in his opinion Salazar's revenge-motive assertion was not credible
or consistent with the records Gilhousen reviewed. On redirect examination, the State
elicited additional testimony from Gilhousen regarding the credibility of Salazar's revenge
motive. 

 On redirect, Gilhousen was asked if he had a professional opinion about whether
Salazar raped his victims out of revenge for what happened to him. Gilhousen testified that
in his opinion that was not why Salazar had committed the rapes. Gilhousen was asked if he
reviewed the parole case summary and whether the parole report played an important part in
his opinion of Mr. Salazar. Gilhousen replied, "I think it played a part in terms of my
determining about the revenge motive to some extent." Gilhousen stated that "the statements
. . . [Salazar] made to the parole officer would suggest that--that it wasn't a revenge motive." 
When the State asked Gilhousen specifically what statements Salazar made that led
Gilhousen to conclude the revenge motive testimony was not credible, counsel for Salazar
objected stating, "Your Honor, I'm going to object to the hearsay of the statements in the
document. He's already established that Dr. Gilhousen has used the statements to rely on for
his opinion. I think that anything else is prejudicial and is not relevant." 

 The court overruled counsel's objection, and allowed Gilhousen to read from the
paragraph in the parole report that he relied upon in forming his opinion. Gilhousen
responded to the State's question as follows:

 Well, he indicated that he displayed an aggressive attitude and he would say
things like, 


 "Those bitches deserve what they got. If women tease me, then they deserve
what they get." Then later he stated, "When a woman wears certain clothing
that show their body, then they deserve what they get." And he meant--by
deserving what they get, he meant sex. When asked if he meant forced sex, the
offender stated, "If it has to be."


Counsel for Salazar did not request a limiting instruction; however, the court provided one
sua sponte as follows: (1)

 Again, I'll instruct the jury that the fact that this worker for the parole board
says [Salazar] said that doesn't mean that he said it. But this witness relied on
it in determining various things in connection with revenge or whatever. So
it's being offered to you under those terms, that he relied on it; but you're
instructed that it's not being offered for the truth of it. Okay? All right.


 The following day, prior to presentation of evidence, Salazar's counsel made a motion
for mistrial arguing that Gilhousen's testimony was so prejudicial that it could not be cured
by the court's limiting instruction. The court denied counsel's motion. On appeal, Salazar
contends that the admission of Gilhousen's testimony was error because it constitutes hearsay
within hearsay and because the prejudicial effect of the testimony outweighed any probative
value to the extent that the court's limiting instruction was insufficient to cure the error of
admitting the testimony. We disagree. We find, under Rules 703 and 705 of the Texas Rules
of Evidence, the trial court properly admitted Gilhousen's testimony. See Tex. R. Evid. 703,
705.

 An expert may base his opinion upon and testify to facts or data that would not be
admissible in evidence if the facts or data are of a type reasonably relied upon by experts in
the particular field in forming opinions or inferences on the subject. See id. Rule 703 states
as follows: 

 The facts or data in the particular case upon which an expert bases an
opinion or inference may be those perceived by, reviewed by, or made known
to the expert at or before the hearing. If of a type reasonably relied upon by
experts in the particular field in forming opinions or inferences upon the
subject, the facts or data need not be admissible in evidence. 


Tex. R. Evid. 703. Rule 705 provides in pertinent part:


 (a) Disclosure of Facts or Data. The expert may testify in terms of
opinion or inference and give the expert's reasons therefor without prior
disclosure of the underlying facts or data, unless the court requires otherwise. 
The expert may in any event disclose on direct examination, or be required to
disclose on cross-examination, the underlying facts or data. 


 . . . .


 (d) Balancing test; limiting instructions. When the underlying facts or
data would be inadmissible in evidence, the court shall exclude the underlying
facts or data if the danger that they will be used for a purpose other than as
explanation or support for the expert's opinion outweighs their value as
explanation or support or are unfairly prejudicial. If otherwise inadmissible
facts or data are disclosed before the jury, a limiting instruction by the court
shall be given upon request. 


Tex. R. Evid. 705(a),(d). 


 When an expert relies upon hearsay in forming his opinion, and it is of a type
reasonably relied upon by such experts, the jury is generally permitted to hear it. See Tex.
R. Evid. 703; see also Decker v. Hatfield, 798 S.W.2d 637, 638 (Tex. App.--Eastland 1990,
writ dism'd w.o.j.). Inadmissible evidence relied upon by an expert should be excluded only
"if the danger that [the evidence] will be used for a purpose other than as explanation or
support for the expert's opinion outweighs [its] value as explanation or support or [is]
unfairly prejudicial." Tex. R. Evid. 705(d). The rule further provides for the use of a
limiting instruction by the court to ensure that otherwise inadmissible evidence is not
improperly used by the jury. Id. On the evidence presented we hold the trial court's ruling
was not an abuse of discretion.

 On direct examination Dr. Gilhousen explained that determining whether Salazar
chose his victims as part of a revenge motive, or whether they were strangers, was important
in assessing the risk that he would reoffend. Gilhousen further testified that parole records
and summaries detailing the defendant's crimes and "the kinds of things they've said about
their crimes . . ." are the types of records normally relied upon by experts in his field to make
such assessments. Gilhousen testified that the parole report "played a part" in his assessment
of the credibility of Salazar's revenge motive contention. 

 Disclosing the statements Gilhousen relied upon in forming his opinion assisted the
jury in evaluating the weight to give Gilhousen's opinions. See Austin v. State, 222 S.W.3d
801, 812 (Tex. App.--Houston [14th Dist.] 2007, pet. ref'd), cert. denied, __U.S. __, 128
S.Ct. 1230, 170 L.Ed.2d 79 (2008) (citing Ramirez v. State, 815 S.W.2d 636, 651 (Tex. Crim.
App. 1991)). Although the statements were prejudicial and there was some risk the jury
might use them for another purpose, we conclude this risk did not outweigh their value as
explanation and support for Gilhousen's opinions. See Austin, 222 S.W.3d at 812. Without
reaching the question of whether the statements were admissible, in light of the instructions,
we find the trial court did not abuse its discretion in admitting the statements upon which the
expert formed his opinion. See Tex. R. Evid. 705(d), 801, 803.

 In addition, we conclude that even had the court erred in admitting the testimony, such
error was not reasonably calculated to cause and probably did not cause rendition of an
improper judgment. Tex. R. App. P. 44.1; Stam, 984 S.W.2d at 749. Although the statements
referenced from the parole report were prejudicial, the jury had already been presented
substantial evidence that Salazar's revenge motive was not credible, including other
comments Salazar made about his crimes. In its initial questioning of Gilhousen regarding
the credibility of Salazar's revenge motive, the State asked, "Did you see any indication in
the records reviewed of why he chose those people as his victims?" Gilhousen replied, "I
think that he indicated in one interview, I think it was with parole--I'm not sure exactly who
it was--but that he chose his victims because they were easy, easy prey, so to speak."
Salazar's counsel did not object to this testimony. The following testimony was also elicited
from Gilhousen:

 The State: Were the records--without going into the details, Doctor, were
the records that you reviewed about the offenses, did they
indicate whether or not the person that perpetrated that crime
would have been a friend or an acquaintance or a stranger just
by the nature of the offense?


 Gilhousen: Could you repeat that question? I didn't understand it.


 The State: Yes, sir. Without going into the details of the crime, when you
looked at the details of the crime in your review of the records,
did the details of that crime, the way that crime was carried out,
indicate whether or not the person that carried out that crime
would have been an acquaintance or a stranger?


 Gilhousen: No, it looked pretty strongly like they would have been a
stranger.


 The State: With the exception of the juvenile that you previously
mentioned, did you see any evidence that indicated that the
victims knew him prior to being assaulted?


 Gilhousen: No, none.


In addition, Gilhousen testified that the fact that Salazar's sex offenses were all against
women discredited Salazar's revenge motive, as the sexual abuse allegedly committed
against him as a child was forced anal sex by males. Finally, Salazar admitted during his
deposition testimony that he began to enjoy his activities in the rapes and forcing sex on
women. 

 The erroneous admission of evidence that is cumulative of other evidence in the
record is ordinarily not reversible error. See Thornhill v. Ronnie's I-45 Truck Stop Inc., 944
S.W.2d 780, 793 (Tex. App.--Beaumont 1997, writ dism'd by agr.) (citing Mancorp., Inc.
v. Culpepper, 802 S.W.2d 226, 230 (Tex. 1990)); see also Sosa v. Koshy, 961 S.W.2d 420,
428 (Tex. App.--Houston [1st Dist.] 1997, writ denied). Because the testimony elicited from
Gilhousen, regarding his reliance on statements referenced in the parole report, was
cumulative of other evidence discrediting Salazar's revenge motive, we find any error by the
trial court in admitting that testimony was harmless. See Thornhill, 944 S.W.2d at 793; see
also Sosa, 961 S.W.2d at 427-28. We overrule issue one. 

FAILURE TO SUPPLEMENT DISCOVERY RESPONSES



 On direct examination, Dr. Clayton was asked whether she found Salazar's allegations
of sexual abuse against him to be credible. She testified as follows:

 About some of--some of it, yes. I do believe that he was sexually
abused by his brother's gay lover when he was probably about six or seven
years old. I do think there were probably--maybe the other instances in
Amarillo were true. One of the things that he claimed as, I think, a way for
him to rationalize why he raped all the women that he did was he claimed that
all the women, all the different victims, that someone in their family had
sexually molested him at one time or another.


 So I don't think he was true--I don't think that actually happened. And
the victims that I spoke to in the telephone interviews adamantly denied that
anybody in their family had ever sexually abused Mr. Salazar. And they said
no one in their family ever knew Mr. Salazar until after he had sexually
assaulted them, except for one of the victims. 


Clayton was then asked whether she had discussions with Salazar regarding his criminal
history, other than his sexual offenses. In the middle of Clayton's answer, Salazar's counsel
asked to approach the bench. Counsel stated that they had not received any notes in
discovery from the victim interviews that Clayton referenced in her testimony. Counsel
asked that any such notes be produced, that Clayton's testimony be stricken from the record,
and that a limiting instruction be provided. The State responded that it did not have copies
of any such notes and did not know if any existed. The trial court denied counsel's requests
to strike the testimony and to provide a limiting instruction. 

 On cross-examination Salazar's counsel questioned Clayton about her interviews with
the victims. Clayton testified that she had independently contacted some of the victims over
the telephone to interview them after her deposition. Clayton explained that her assistant had
contacted an investigator for the Special Prosecution Unit and obtained the telephone
numbers of three of Salazar's victims. During her testimony regarding the dates upon which
she interviewed the three victims, Salazar's counsel asked Clayton if she was referencing
notes that she had made when she conducted the interviews with the victims. Clayton stated
that she was. Counsel requested, and was given, an opportunity to examine Clayton's notes. 
Thereafter, counsel moved for a mistrial, which was denied, and a bench conference ensued. 
In addition to a request for mistrial, Salazar's counsel requested a continuance in order to
depose the victims interviewed by Clayton. 

 The State responded that failing to produce the interview notes in discovery did not
result in prejudice or surprise because each of the victims was listed by the State in discovery
responses as persons with knowledge of relevant facts. In addition, the State explained that
because Clayton had never produced the notes to the District Attorney's Office, the State
never had the notes to produce to counsel. Additionally, the State contended that the
information gathered from Clayton's interviews "was nothing but consistent with what she
found in the records." Therefore, according to the State, Salazar had not been prejudiced. 
The trial court recognized that under the rules there is a duty to supplement discovery
responses, but acknowledged the State's position that the State was not aware of the notes
prior to trial and, therefore, could not have produced them. The court also found significant
that Salazar had the opportunity to depose the victims prior to trial. Counsel's motion for
mistrial and request for a continuance were both denied. 

 On redirect examination, the State questioned Clayton further about her victim
interviews and notes as follows:

 State: Did you ever send those notes to me or my office?


 Clayton: No, sir.


 State: Okay. Did I in any way request that you not send those notes to me?


 Clayton: No, we never had any type of communication about any kind of
notes.


 State: Okay. Did your interviews of those individuals in any way
change your opinion as to whether or not Jose Salazar has a
behavior abnormality?


 Clayton: No, it did not change my opinion in any way. 


 State: Did your interviews of those individuals in any way change your opinion as to whether or not Jose Salazar's behavior abnormality makes him likely to engage in predatory acts of sexual violence?


 Clayton: No, it did not change my opinion.


 State: Were the reports that you got through the use of those interviews
consistent with the statements that you had reviewed previously
in the documentation provided to you?


 Clayton: Yes. It was just a reiteration, basically, of what I had read in the
packet. There was no difference.


 State: At the time of your deposition in this cause, had you already
formed your professional opinion?


 Clayton: Yes.

On appeal, Salazar argues that the trial court erred in allowing into evidence Clayton's
testimony regarding her telephone interviews with the victims. The linchpin of Salazar's
argument is that the State violated the rules of civil procedure by not supplementing its 
discovery responses with Clayton's notes, and, as a result, Clayton's testimony should have
been excluded or a limiting instruction provided. We review whether the trial court erred in
declining to strike testimony or to provide a limiting instruction for an abuse of discretion. 
Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37, 52 (Tex. App.--San Antonio 2006, no pet.)
(citing Anderson Producing, Inc. v. Koch Oil Co., 929 S.W.2d 416, 425 (Tex. 1996)). A trial
court abuses its discretion when it acts without reference to any guiding rules and principles. 
Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004). 

 We find that under Rule 193.5 of the Texas Rules of Civil Procedure the trial court
did not abuse its discretion in allowing Clayton's testimony. "The general rule in Texas is
that a party must make a full and complete response to proper discovery requests, and this
obligation includes the duty to timely supplement discovery." Vela, 203 S.W.3d at 53 (citing
Tex. R. Civ. P. 193.5). However, the duty to supplement discovery does not arise until a
party learns that its response is no longer complete and correct. See Tex. R. Civ. P. 193.5. 
Rule 193.5 provides:

 (a) Duty to Amend or Supplement. If a party learns that the party's
response to written discovery was incomplete or incorrect when made, or,
although complete and correct when made, is no longer complete and correct,
the party must amend or supplement the response: 


 (1) to the extent that the written discovery sought the
identification of persons with knowledge of relevant facts, trial
witnesses, or expert witnesses, and


 (2) to the extent that the written discovery sought other
information, unless the additional or corrective information has
been made known to the other parties in writing, on the record
at a deposition, or through other discovery responses.


Id. "This duty to supplement applies to information concerning expert witnesses, and the
trial court must exclude the testimony of an expert witness when the duty to supplement has
been violated, absent a showing of good cause or no unfair surprise." Vela, 203 S.W.3d at
53 (citing Tex. R. Civ. P. 193.6, 195.6). Moreover, "[t]o the extent a party's retained
testifying expert changes or modifies his opinion, the party must amend or supplement the
expert's deposition testimony or written report with regard to his mental impressions or
opinions and their basis." Id. 

 Even if a duty to supplement discovery did arise, the trial court properly found that
good cause existed for the failure to supplement. The trial judge stated, "[W]hat you're
saying is there's a duty to supplement? . . . And in this case the counselor for the State says
he wasn't aware of the matter, so therefore he couldn't." See Tex. R. Civ. P. 193.6(a)(1); see
also Tri-State Motor Transit Co. v. Nicar, 765 S.W.2d 486, 490 (Tex. App.--Houston [14th
Dist.] 1989, no writ)(good cause finding implicit in trial court's comments and questions to
counsel). The court's finding of good cause is supported by the record. Tex. R. Civ. P.
193.6(b). Additionally, this is not a situation in which one party presented a material
alteration of an expert's opinion at trial. The record shows that the information obtained in
the victim interviews was a "reiteration" of information Clayton had already been provided
and did not change Clayton's opinion. We hold that Clayton's testimony was properly
admitted under the Texas Rules of Civil Procedure. See Tex. R. Civ. P. 193.5, 193.6(a). We
overrule issue two.

DENIAL OF MOTION FOR CONTINUANCE
 


 Salazar contends that the trial court erred in failing to grant his motion for
continuance, sought in order to depose the victims interviewed by Clayton. A court may
grant a continuance or temporarily postpone a trial to allow a discovery response to be made,
amended, or supplemented, and to allow opposing parties to conduct discovery regarding any
new information presented by an amended response. Tex. R. Civ. P. 193.6(c). The trial
court's denial of a motion for continuance will not be disturbed absent a clear abuse of
discretion. Snider v. Stanley, 44 S.W.3d 713, 718 (Tex. App.--Beaumont 2001, pet. denied). 

 Here the motion for continuance was made in the middle of trial after testimony from
several witness had already been presented. Clayton testified that information provided by
the victims was "just a reiteration" of information she had already been provided and did not
change her opinion. Clayton's testimony regarding her interviews with the victims was
minimal. She testified only that the victims denied that they or their family members knew
Salazar prior to the crimes committed against them. Moreover, the victims were all listed as
persons with relevant knowledge in the State's disclosures. The trial court's failure to grant
the continuance did not prevent Salazar from cross-examining Clayton or from otherwise
presenting his defense. Under the circumstances, we hold the trial court did not abuse its
discretion in denying Salazar's motion for continuance. We overrule issue three. Having
overruled all issues presented, we affirm the judgment of the trial court. 

 AFFIRMED. 


 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 29, 2008 

Opinion Delivered November 26, 2008


Before McKeithen, C.J., Kreger and Horton, JJ.
1. In addition, the jury was provided an additional limiting instruction in the jury charge.