Everett C. WARREN, Jr., et al.

v.

James J. HARTNETT, Administrator, et al.

No. 19360.

Court of Civil Appeals of Texas, Dallas.

Dec. 28, 1977.

Rehearing Denied Jan. 26, 1978.

H. C. McCracken, Jr., McCracken, Shields & Taylor, Carrollton, for appellant.

Wm. Andress, Jr., Wm. Andress & Associates, Dallas, for named appellees.

Leonard E. Choate, Dallas, for Texas Scottish Rite Hospital.

ROBERTSON, Justice.

Everett C. Warren, Jr. and other heirs at law moved to set aside the probate of the holographic will of Callie Lastor, deceased. At the close of contestants' evidence, the trial court directed a verdict for the proponents. Contestants allege two points of error on this appeal. First, they argue that the alleged will was a contingent will which was precluded from taking effect by the non-occurrence of the contingency. Alternatively, they argue that sufficient evidence was introduced to support the submission of an issue on lack of testamentary capacity to the jury. We disagree with these arguments, and accordingly, affirm the judgment of the trial court.

## Contingency of the Will

■ According to the parties' agreed interpretation of the instrument,[1] the holographic will of Callie Lastor, reads as follows:

> 24 Nov (November 1969) I make a weld (will)
> by myself I put it in
> the box at Bank so if
> enny thank (anything) hapen (happens) to me
> when I have my teeth pull (pulled)
> I goin (going) Monday 1 Dec. (December 1, 1969)
> I want the Steate (Estate) to take
> care of my fare (affairs) and the (they)
> cane (can) take the money it (needs) to
> see after my fare (affairs)
> I want my state (estate) sold and
> (divided) between my fondle (family)
> I (am) goin (going) to give ther (their) mane (names)
> Ernest Warren  Houston Tex the (he) is
> my nuefue (newphew) and
> Callie Rasco and hear (her) Husband
> Sunney Rasco                    Irving, Tex
> and Rosllee (Rosalee) and Tomie (Tommy) Forgy (Fogus) Irving
>                                        Tex
> and Jane (James) Serchurgerg (Ranschuber) of San Tone
>                  (San Antonio) nefue my (my nephew)
> and I goin (going) to leve (leave) a nuff (enough)
> money to take care of Snow Ball cat
> I want Ernest Warren to see
> after him I leving (leaving) 4 Thousand Dollars
> and when he (Snowball) die I want
> the rest to go to Mason
> Hone (home) ofr (for) creepl (Crippled) Children
> and I want Grover Warren my
> brother. To get (in touch) 4406 Cardinal Drive
> Dallas Tex
> Brother Evertt (Everett) Warren address
> Rout #1 Box 90 Troup, Texas
> Eugene Lastor Jr. 1840 Meadow Valley St.
>                                Dallas Texas
> I want every thank (thing) sold and
> (divided) between then (them) but I want
> the cat (to have) 3 thousan (Thousand) dollars
> fro (for) the Cat Snowball
> and when he did (dies) I
> want th (the) rest of his money
> to go to Mason hone (home) for (crippled)
> children.

1. Letters and words in parentheses supplied by agreement of the parties.

I (am) goin (going) on plan (plane)
to morrow to
San ton (San Antonio)      (If)
(something) happens
I want the state (estate)
to see
after.

Callie
Mrs. B. H. Lastor

---

Contestants argue that the two phrases "if enny thank (anything) hapen (happens) to me when I have my teeth pull (pulled)" and "I (am) goin (going) on plan (plane) to morrow to San ton (San Antonio) (If) (something) happens . . .," establish that the operation of the will is contingent upon death occurring as a result of one of the two specified events. They urge that since Mrs. Lastor's death was not due to either of the named events, the will never became effective and was not entitled to probate. We disagree. As we construe the will, the conditional language creates and ambiguity regarding the meaning of the instrument. This is because the conditional language does not necessarily refer to the effectiveness of the will. The phrase "I make a will by myself" can be viewed separately from "I put it in the box at the bank so if anything happens to me . . .." Construed in this fashion, the conditional language only relates to the testatrix's reason for placing the will in the safety deposit box at the bank. In other words, the statement may simply reflect her concern over the will's safety and accessibility upon her death from the named event, rather than her intention to make her will contingent. The other phrase, "I am going on plane tomorrow to San Antonio if something happens I want the estate to see after," also does not necessarily reflect a contingent intent. By this language, the testatrix may simply be reflecting her concern that her estate be settled in the event of her death from the plane trip. Such a manifestation of concern is consistent with an inducement to the will's execution, rather than as a condition precedent to its effectiveness.

Since we find that the language of the will is ambiguous, our construction of the instrument is guided by the rules set forth in *Ferguson v. Ferguson*, 121 Tex. 119, 45 S.W.2d 1096, 1097 (1932):

1. The fact that the testatrix left a will implies that she did not intend to die intestate.
2. A will is construed to be general and not a contingent will unless the intention to the contrary clearly appears either expressly or by necessary implication from a reading of the entire will.
3. If a will is open to two constructions, it will be given the interpretation which prevents intestacy.
4. If the intent to make a contingent will is not apparent, the event mentioned in the will will be treated as an inducement which motivated the preparation and execution of the will, and the will is entitled to probate as a general will.

Applying these rules to the present case, we conclude that this will is not a contingent will. The contingent intent is not apparent from either the express language or by necessary implication. Both "conditional" phrases are ambiguous, and accordingly, we are obliged to adopt the construction which prevents intestacy.

Contrary to the contestant's arguments, this case is not controlled by our supreme court's opinion in *Bagnall v. Bagnall*, 148 Tex. 423, 225 S.W.2d 401, 402 (1950). While it is true that *Bagnall* held that the expression of a condition in a will conclusively demonstrates the intent to create a contingent will, that rule cannot apply in cases where a condition does not necessarily re-

late to the effectiveness of the will. The will construed in *Bagnall* was as follows:

Remember me W. W. Bagnall by this. If any thing happens to me. While gone. All my belongings and estate goes to James B. Bagnall Brother of mine.

This conditional language clearly related to the will's effectiveness, and there was no need to resort to rules of construction. Where ambiguity exists, however, we are not obligated to give conditional language conclusive effect, and we must be guided by the rules of construction we have stated above.

### Testamentary Capacity

■ Contestants next argue that the trial court erred in instructing a verdict for proponents because there was evidence to support the submission of an issue on testamentary capacity to the jury. We disagree. Although we recognize that an instructed verdict is proper only if there is no evidence to support submission of necessary issues, and that we must indulge every inference that may be properly drawn from the evidence against the action of the trial court, *Echols v. Wells*, 510 S.W.2d 916 (Tex.1974); *Stockton v. Kroger Co.*, 559 S.W.2d 101 (Tex.Civ.App.—Dallas 1977) (Not yet reported), we nevertheless conclude that the instructed verdict was proper in this case. Other than that found in the holographic document itself, the only evidence of the testatrix's mental condition is her statement in 1974 that "she had been rocking along drinking too much, eating too little," and testimony that the testatrix was seen having one cocktail at a Christmas party in 1968. No legitimate inference of testamentary incapacity can be drawn from these facts.

■ Contestants urge that we should consider also the testimony of a handwriting expert who testified that, due to alcoholism, the deceased did not have sufficient mental ability to understand her business, the nature and extent of her property, or the natural objects of her bounty. This opinion was based upon the expert's comparison of the handwriting of the will with two postcards written earlier. We cannot give this testimony any probative effect. The evaluation of abnormal mental conditions is peculiarly within the field of *medical* science, particularly psychiatry, and also, perhaps, abnormal psychology, but we are aware of no recognized field of scientific inquiry which permits divination of mental capacity by persons whose expertise is limited to handwriting analysis. We recognize that non-physicians may qualify as medical experts by virtue of special experience, *St. Louis, B. & M. Ry. Co. v. Davis*, 262 S.W. 923, 925 (Tex.Civ.App.—Galveston 1924, writ dism'd); *Missouri K. & T. Ry. Co. of Texas v. Farris*, 124 S.W. 497, 499 (Tex. Civ.App.—1910, writ ref'd); 2 McCormick & Ray, Texas Law of Evidence § 1421 (2d ed. 1956), however, this witness did not demonstrate any special training or experience in the observation or treatment of persons with mental disorders. Although she stated that she had "lots of experience" with alcoholics, and that she had seen their handwriting, mere association with alcoholics and examination of their handwriting is not sufficient "special experience" to qualify a person as an expert in the fields of alcohol-related disorders and the effects of those disorders on a person's handwriting. *Compare Doherty v. Dean*, 337 S.W.2d 153 (Tex. Civ.App.—Austin 1960, no writ) (*psychologist* held qualified to evaluate mental attributes despite lack of medical degree); *St. Louis, B. & M. Ry. Co. v. Davis, supra* (nurse held qualified to testify regarding patients physical condition); *Missouri, K. & T. Ry. Co. of Texas v. Farris, supra* (Witness held qualified despite failure to attend medical school since he had *studied anatomy and lectured on other medical subjects* ).

Since the handwriting experts opinion cannot be treated as that of an expert witness qualified to diagnose or treat mental disorders, it can only be given the weight of the opinion of a lay witness. Even as that of a lay person, however, the testimony is still deficient because the witness did not state enough related facts, based upon her personal knowledge of the testatrix's characteristics, to support her

opinion. *Singleton v. Carmichael*, 305 S.W.2d 379 (Tex.Civ.App.—Houston 1957, writ ref'd n. r. e.). She did not base her opinion on any actual observation of the testatrix, and there is no direct evidence that the testatrix was, in fact, subject to alcoholism. From handwriting alone, the witness drew the conclusion that the testatrix was an alcoholic and that because of this alcoholism she did not have testamentary capacity at the time she wrote the will. We conclude that this testimony lacked probative value. *See Hamill v. Brashear*, 513 S.W.2d 602 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.).

Affirmed.