COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-324-CV

 

 

IN THE INTEREST OF L.A.C., 

MINOR CHILD

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant
A.C. appeals from the termination of her parental rights to son L.A.C.  Because (1) Appellant does not raise a valid
challenge to the finding under section 161.001(1)(M) of the family code,[2]
(2) the evidence is legally and factually sufficient to support termination,
and (3) the trial court did not reversibly err, we affirm the trial court=s
judgment.

 








I.  Error, if any, in admitting evidence
regarding Appellant testing positive for methamphetamine after L.A.C.=s birth
is harmless, and termination is supported by legally and factually sufficient
evidence.

The
trial court allowed a CPS worker to testify, over objection, that the final
straw that prompted the department to take action to remove L.A.C. from
Appellant was a July 2007 hair follicle test on Appellant that was positive for
methamphetamine.  The trial court gave a
limiting instruction to the jury that the Atestimony
you=re about
to receive about the drug test is admitted to you not for the truth of the drug
test or that the drug test was positive but to showCto aid
you, if it does aid you, in explaining why the Department took the actions it
did.@  In her first issue, Appellant contends that
the trial court abused its discretion by admitting the testimony when the
results themselves were excluded.  Even
if the trial court erred by admitting the testimony, which we do not hold,
Appellant cannot show harm.








To
obtain reversal of a judgment based upon an error in the trial court, the
appellant must show that the error occurred and that it probably caused
rendition of an improper judgment or probably prevented the appellant from properly
presenting the case to this court.[3]  We examine the entire record in making this
determination of harm.[4]

In her
second issue, Appellant contends that the evidence is legally and factually
insufficient to support the judgment of termination, challenging the
endangerment findings under subsections (D) and (E)[5]
and the best interest finding.[6]  Because we combine our sufficiency review
with our analysis of Appellant=s issue
complaining of evidentiary error, we exclude the challenged evidence from our
review.[7]








In
addition to finding by clear and convincing evidence that Appellant engaged in
conduct or knowingly placed L.A.C. with persons who engaged in conduct which
endangered his physical or emotional well-being,[8]
the jury and trial court also found by clear and convincing evidence that
Appellant had previously had her parent-child relationship terminated with
respect to another child based on an endangerment finding under subsection (D)
or (E), a ground for termination under subsection (M).[9]

Appellant
does not challenge the evidence supporting the finding under subsection (M) in
her opening brief.  She argues within her
sufficiency issue discussion in her reply brief for the first time that the
prior termination order is irrelevant and that the trial court erred by
considering the evidence of the prior termination.  Neither argument was preserved at trial.  Additionally, Appellant still does not
challenge the sufficiency of the evidence supporting the finding under
subsection (M), and we note that she does not challenge the validity of
subsection (M).  In the interest of
justice, we point out that the evidence supporting the finding under subsection
(M) is legally and factually sufficientCa
certified copy of the termination decree terminating Appellant=s
parental rights to L.A.C.=s two older sisters was admitted
into evidence,[10]
as well as testimony concerning that terminationCand
Appellant did not object or offer conflicting evidence.








Along
with a best interest finding, a finding of only one ground alleged under
section 161.001(1) is sufficient to support a judgment of termination.[11]  Because we uphold the finding under
subsection (M), we need resolve only whether the evidence is legally and
factually sufficient to support the best interest finding.[12]

Appellant
admitted that she is an addict. 
Appellant, who was thirty-eight years old at the time of trial, began
using marijuana when she was thirteen or fourteen years old.  When asked, she did not remember whether she
again used marijuana in 2003.  She used
methamphetamine in 2004, 2005, and 2006. 









Appellant
testified that in December 2005, two of her young daughters, one a newborn,
tested positive for methamphetamine.  In
January 2006, Appellant tested positive for methamphetamine.  She admitted at trial that she had begun
using close to a year before that test and that she had used methamphetamine
every weekend during her pregnancy with that newborn daughter.  Appellant testified that her boyfriend, the
father of those daughters and L.A.C., gave her the drugs and used them on the
weekends as well.  Appellant testified that
she stayed clean for a little while during the CPS case involving her two young
daughters but used methamphetamine again after less than four months=
sobriety.  Appellant admitted that after
she relapsed, she did not complete the outpatient drug rehabilitation program,
she did not attend Alcoholics Anonymous (AA) or Narcotics Anonymous (NA), she
did not go to counseling, she was not working, and her boyfriend was paying the
bills.  She testified that unlike her, he
was not using drugs during that period.

In March
2006, while the prior CPS case was still pending, Appellant was arrested for
possession of a controlled substance and received four years=
deferred adjudication community supervision. 
She testified that she had sold half of her boyfriend=s
methamphetamine to pay bills.  In August
2006, Appellant was arrested again; her two young daughters were with her.  At the time of her arrest, she was using
methamphetamine, and the police found a methamphetamine pipe in her hotel
room.  CPS then filed a  petition to terminate her parental rights to
her two young daughters.  Appellant
testified that she was again offered services, and she Agot most
of them done@ but did not complete them.  Her boyfriend did not complete any services.

In
October 2006, Appellant spent some time in jail for her failure to attend a
court hearing.  She used methamphetamine
again on October 19, 2006.  She was
arrested that day, and she testified that she had not used methamphetamine
since that day.








When
under the influence of methamphetamine, Appellant stayed up for more than a two
day period over the weekends; the longest she stayed up was about three
days.  Appellant testified that she
probably made worse decisions when under the influence of methamphetamine.

In
November 2006, the trial court modified Appellant=s
community supervision terms to send her to a treatment facility to address her
methamphetamine use.  She did not
complete that program.  According to her
testimony, the treatment center could not deal with her medical issues,
including her high-risk pregnancy with L.A.C., diabetes, and blood
pressure.  After she left that program,
she started going to an outpatient program four days a week.

Appellant
admitted that she did not seek prenatal care during the first four months of
her pregnancy with L.A.C., despite having had prior high-risk pregnancies.  When she did seek care, it was at the
high-risk pregnancy center in Parkland. 
She testified that she told the hospital personnel that she was smoking
marijuana while pregnant.  In December
2006, she tested positive for marijuana.








She
recalled using marijuana again when she really wanted to use methamphetamine
but could not remember if that event occurred in February 2007, the month in
which the State moved to proceed to adjudication on her March 2006 arrest.  She admitted testing positive for marijuana
on March 29, 2007, in May 2007, and in July 2007 at L.A.C.=s
birth.  She testified that at that time,
she was smoking marijuana Amaybe
once a month, every three weeks,@ and
that A[p]eople
gave it to@ her.  She testified that she had stopped going to
NA and AA in her eighth month.  Appellant
denied using or being around other people using methamphetamine from March 2007
to July 2007.

Appellant
stated that even though she knew that marijuana was illegal and that she took
risks to use it, especially while on deferred adjudication community
supervision, she used it because she did not want to use methamphetamine and
did not want anything to happen to her baby. 
She had never heard of anyone getting hurt from marijuana.  Appellant testified that marijuana made her
hungry, but she did not want to eat when she was pregnant.  It made her laugh, and it made her happier
when she felt depressed. She did not believe that it affected her
decision-making.  She admitted, however,
that her older son=s issue with marijuana got him into
criminal trouble.  Appellant stated that
she used marijuana during the time she attended NA and outpatient drug
therapy.  On cross-examination, she
admitted, AAlcohol, marijuana, meth, it=s all
the same. . . . It all is mind altering. 
It=s all addictive.@








The CPS
caseworker for Appellant=s case involving her two young
daughters testified that Appellant had not participated in any of her services
as of May 2007.  In June 2007, Appellant=s
parental rights to her two young daughters were terminated; Appellant did not attend
that trial.  Some testimony at the trial
involving L.A.C. indicated that Appellant had been sick during the earlier
trial.

L.A.C.
was born in July 2007.  Even though
Appellant tested positive for marijuana, his test results were negative.  L.A.C. was removed from Appellant=s care
and taken directly to a foster home from the hospital.

When
asked, Appellant answered that she did not know whether her smoking marijuana
during the pregnancy affected L.A.C. 
Appellant testified that she had used methamphetamine during her prior
pregnancy with L.A.C.=s sister and had quit because
using while pregnant made Appellant sick. 
Appellant stated that she was sure that using methamphetamine during a
pregnancy affects the child.  She claimed
that she did not see any physical effects in her young daughters but that she
knew they missed her.  She agreed that
they had been emotionally endangered as a result of her choices.  She also testified that she had never been a Areal mom@ to them
because she was using drugs.  She stated
that she had let them down; she had not provided for them, taken care of them,
or given them the attention they needed.








Appellant
admitted that she had knowingly wronged L.A.C. by using drugs during her
pregnancy with him and by not being in his life at the time of trialCAnot
providing for him@ and Anot
loving him.@ 
She admitted that using drugs during the pregnancy Acould
have affected his health@ and endangered him
physically.  She admitted that as a
result of her choices, L.A.C. was not getting to know his mother.  She agreed that her Acurrent
situation and the choices [she had] made up to [the time of trial] have been
emotionally endangering to [L.A.C.]@

Appellant
testified that after L.A.C.=s birth
but during his extended hospital stay, she bonded with him.  She testified that she had decided that she
wanted to stay clean and that she wanted her children back but that this time
she actually did something toward her goal. 
She began services again.  She
testified that she completed her drug and psychological evaluations, attended
NA six or seven days a week, and attended drug outpatient therapy and was four
weeks short of completing it when, in November 2007, she was convicted and
sentenced to one year=s confinement based on her March
2006 arrest.  She stated that she had
started going to church and was saved and baptized a week before her
incarceration.  A CPS caseworker testified
that before her incarceration, Appellant visited L.A.C. regularly for the most
part, she attended New Day Counseling outpatient treatment and NA, and she
completed parenting classes.








Appellant
was still confined at the time of trial. 
Appellant admitted that her confinement was based on decisions she had
made.  She testified that while in jail,
she was currently working on Steps 11 and 12 of NA or AA and that she had taken
a parenting class, anger management, and a drug counseling program while in jail.

While
Appellant denied any drug use since L.A.C.=s birth
in July 2007, she admitted that the majority of her period of sobriety had been
spent incarcerated.  When asked, AWould
you agree with me that there=s a big
if as to whether or not you=re going
to maintain your sobriety once you=re
released from the jailhouse?@, she
responded, AOnly God knows.@

Appellant
testified that her release date would be November 5, 2008, that she did not
have a home for L.A.C. at the time of trial, that she was still in the
long-term process of recovery, and that

Right now in my recovery, I don't think I'm ready for him to come
back.  I just wanted a chance for a
visitation and an extension on my services or something, anything, because I
know I need to C I know I need to work on
myself.  I need to get a job.  I need to get a place to live.  I need to continue my NA. I need to continue
working on my steps.

 








She testified that if she had to
pick a date when she would be ready for L.A.C. to come to her home, it would be
A[a]
while.@  Appellant testified, AI have
to work on myself first and get my life together and continue my recovery, get
a good job, be able to provide for him. I know it's not going to be quick,
maybe one or two years.@ 
Appellant planned to leave L.A.C. in her cousin=s home
if termination did not occur; she believed that even after she got her life
together, she would just ask to be in his life. 
She admitted that having L.A.C. wait on her time line would not be fair
to him.  She also agreed that his waiting
and not knowing where he=s going to be or not knowing if
he=s going
to move to a whole new home A[p]robably
wouldn=t@ be in
his best interest.  But she stated that
it was in L.A.C.=s best interest for her rights
not to be terminated so he could Aget to
know his real mother@ and that it would benefit him
to get to know her because she believed that Afamily
should stay together.@

Appellant
had not had a full-time regular job since before she started dating L.A.C.=s birth
father thirteen years before trial.  The
CPS caseworker stated that Appellant did not demonstrate any ability to
maintain stable employment or suitable housing. 
Appellant agreed that from the beginning of the case involving L.A.C.,
she had understood that she had to prove certain things to make sure that she
had a stable home for him to come home to, and she testified that she did not
believe that she had been able to prove those things.








The CPS
caseworker testified that termination of Appellant=s
parental rights is in L.A.C.=s best
interest because he deserves permanency, security, stability, and Ato know
that somebody is going to be there at all times to care for him and to provide
him with his basic needs, his food, clothing, and shelter and not somebody who
is going to skip out of his life periodically as [Appellant] has done.@  Because he is only a year old, the risk of
returning L.A.C. to Appellant is greater, the caseworker testified; he is more
vulnerable because he cannot speak for himself, help feed himself, or make an
outcry if necessary.  The caseworker
testified that the State Afeels that [Appellant] has not
been able to make significant progress from the services that have been offered
to her.  She has not been able to
demonstrate stability in her life or she=s not
been able to show that her pattern of behaviors in the past ha[s] changed.@  The caseworker explained that it is easier to
maintain sobriety in an institutional setting, and that the State has had no
time to evaluate Appellant to see if she=s going
to maintain her sobriety or benefit from any skills that she learned in her
classes in jail.

After
Appellant=s incarceration, the CPS
caseworker saw her at hearings but otherwise had no direct contact with her;
the caseworker did not visit Appellant in jail.








The
State=s plan
for L.A.C. if the jury terminated Appellant=s rights
was adoption by Appellant=s cousin.  The caseworker testified that the cousin and
L.A.C. have bonded.  Appellant=s cousin
testified that L.A.C. has been in her home for more than six months, that he is
healthy and happy, that he has a routine, that he is attached to her, her
husband, and their children, and that he visits once a month with his siblings
and maternal grandmother.  Appellant=s cousin
testified that she and her husband love L.A.C. like their biological children
and that they want to adopt him.  She
also testified that she would be open to supervised visitation between L.A.C.
and Appellant if Appellant were off drugs and able to overcome her
addiction.  Appellant had no concerns or
issues about L.A.C. living with her cousin and her family; Appellant testified
that her cousin is a very good mother and that her cousin=s family
is Aa good
family.@








Applying
the appropriate standard of review[13]
but ignoring the evidence regarding Appellant testing positive for
methamphetamine after L.A.C.=s birth,
we hold that the evidence is legally and factually sufficient to support the
best interest finding and that the evidence is therefore legally and factually
sufficient to support termination.  We
overrule Appellant=s second issue.  Because we hold the evidence legally and
factually sufficient without considering the evidence regarding the
methamphetamine test results, we consequently hold that the error, if any, in
the admission of such evidence was harmless.[14]  We overrule Appellant=s first
issue. 

II.  The trial court did not abuse its discretion
by denying a continuance.

Five
days before trial began, Appellant moved for a continuance on the termination
proceedings to Aprovide additional time to
continue her efforts toward recovery.@  She wanted time to serve out her sentence and
find stable employment and suitable housing. 
The trial court denied Appellant=s motion
the day before trial and again near the end of trial when she re-urged it.  In her third issue, Appellant contends that
the trial court abused its discretion by denying the continuance.  








We
review a trial court=s ruling on a motion for
continuance for an abuse of discretion.[15]  We do not substitute our judgment for that of
the trial court.[16]  Instead, we must determine whether the trial
court=s action
was so arbitrary and unreasonable as to amount to a clear and prejudicial error
of law.[17]  The test is whether the trial court acted
without reference to guiding rules or principles.[18]  








In a
termination case, a trial court may not keep the cause on its docket after the
Monday following the rendition of the first temporary order unless the trial
court finds that extraordinary circumstances require an extension of no more
than 180 days.[19]  Even with an extension, trial here could have
been delayed only approximately six and one-half months beyond the date the
trial actually occurred.[20]  Appellant testified that she expected to be
released from jail in early November 2008, more than three months after the
actual trial date and around three months before the last possible date of
trial.  Her service plan goals required
that she establish and maintain safe, suitable, and stable housing and suitable
employment for at least six months. 
At the time of trial, Appellant had no plan for housing or work.  We note that the jury was not asked to rely
on Subsection (O), which provides as a ground for termination the parent=s
failure to follow a court-ordered service plan.[21]

Additionally,
given the trial court=s awareness of Appellant=s prior,
recent CPS experience and Appellant=s
testimony that it could take Amaybe
one or two years@ before she could be in a
position to raise L.A.C., that Aonly God
knows@ whether
she could maintain her sobriety after her release from jail, and that she
relapsed after less than four months=
sobriety during the prior CPS case, we cannot conclude that the trial court
abused its discretion by denying either the original or renewed motion for
continuance.  We overrule Appellant=s third
issue.

III.  Conclusion

Having
overruled Appellant=s three issues, we affirm the
trial court=s judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

DELIVERED:  December 10, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. ' 161.001(1)(M)
(Vernon 2008).





[3]Tex. R. App. P. 44.1(a); Romero
v. KPH Consolidation, Inc., 166 S.W.3d 212, 225 (Tex. 2005).





[4]Interstate Northborough P=ship v. State, 66 S.W.3d 213, 220
(Tex. 2001).





[5]We note that neither the
jury nor the trial court made a finding under subsection (D).





[6]See Tex. Fam. Code Ann. ' 161.001(1)(E), (2)
(Vernon 2008).





[7]See, e.g., N. Dallas
Diagnostic Ctr. v. Dewberry, 900 S.W.2d 90, 97 (Tex. App.CDallas 1995, writ denied) (refusing to consider
evidence held inadmissible in factual sufficiency review).





[8]See Tex. Fam. Code Ann. ' 161.001(1)(E).





[9]See id. ' 161.001(1)(M).





[10]See In re J.M.M., 80 S.W.3d 232, 243
(Tex. App.CFort Worth 2002, pet.
denied).





[11]In re E.M.N., 221 S.W.3d 815, 821
(Tex. App.CFort Worth 2007, no
pet.).





[12]See In re B.K.D., 131 S.W.3d 10, 16 (Tex.
App.CFort Worth 2003, pet.
denied).





[13]See In re J.P.B., 180
S.W.3d 570, 573 (Tex. 2005) (providing legal standard of review); In re
H.R.M., 209 S.W.3d 105, 108 (Tex. 2006); In re R.R., 209 S.W.3d 112,
116 (Tex. 2006) (both providing factual standard of review); see also  Tex. Fam. Code Ann. ' 263.307(a), (b)
(Vernon 2008); Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).





[14]See Tex. R. App. P. 44.1(a);
Romero, 166 S.W.3d at 225.





[15]See BMC Software Belg.,
N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002).





[16]In re Nitla S.A. de C.V., 92 S.W.3d 419, 422
(Tex. 2002) (orig. proceeding).





[17]Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 161 (Tex. 2004).





[18]Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004).





[19]See Tex. Fam. Code Ann. ' 263.401 (Vernon
2008).





[20]See id.





[21]See Tex. Fam. Code Ann. ' 161.001(1)(O)
(Vernon 2008).