**Rod L. SMITH, Appellant,**

v.

**Sandra L. DRAKE, Appellee.**

**No. 10–92–222–CV.**

Court of Appeals of Texas, Waco.

April 14, 1993.

Rehearing Denied May 12, 1993.

Stanley Rentz, Waco, for appellant.

Mark K. Morris, Asst. Atty. Gen., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

### FACTS

This lawsuit was initiated pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) by the Texas Attorney General for Alameda County, California. *See* TEX.FAM.CODE ANN. § 21.18 (Vernon Supp.1993). Sandra Drake, mother of Tamala Drake–Smith, executed an affidavit of paternity and authorized Alameda County to file suit against Rod L. Smith, the alleged father of Tamala Drake–Smith, for a determination of paternity and an order requiring him to make child support payments. *See id.* § 21.02(7) (Vernon Supp.1993). The petition filed by the Texas Attorney General contained the following: (1) a Revised Uniform Reciprocal Enforcement of Support Act Petition, signed by an Assistant Attorney General, (2) a Uniform Support Petition, verified by the Alameda County Collection Enforcement Deputy on "best information and belief and under the penalty of perjury," and (3) a paternity affidavit executed and verified by Sandra Drake also on "best information and belief and subject to penalty of perjury."

The court ordered Smith to submit to blood, body fluid, or tissue testing. *See id.* § 13.02(a) (Vernon Supp.1993). Smith refused to comply with this order and a second order requiring him to submit to testing.

The case was referred to a Master. The Master's recommendation was adopted and an order was signed by the court finding that Smith was the father of Tamala and requiring him to pay child support payments. Smith appealed that order to the referring court, and the case was tried de novo. After a bench trial, he was found to be Tamala's father and ordered to pay child support.

Smith preserved five points for appellate review. The first two points deal with the legal and factual sufficiency of the evidence, and the remaining three points deal with the adequacy of the RURESA pleadings served upon him.

### THE RURESA PETITION

Smith asserts that the RURESA petition was not properly verified since it was not verified by Sandra Drake or by one purporting to be her attorney or agent or by one purporting to have personal knowledge of the facts in the petition. Smith asserts the court erred in three respects with regard to the petition: (1) in its conclusion of law that the issue of paternity is properly raised in the petition; (2) in its conclusion of law that all legal prerequisites to the hearing of the cause and the entry of an order have been met; and (3) in overruling his special exception to the verified pleading.

A state or political subdivision is authorized to commence a proceeding for enforcement of an alleged duty of support. *See id.* § 21.02(7). The petitioner in this suit was not Sandra Drake as Smith contends, but Alameda County. Drake gave permission to Alameda County to institute the suit on her behalf. Because Alameda County is the petitioner, its agent could properly verify the information in the Uniform Support Petition. The deputy verified the petition in her capacity as Collection Enforcement Deputy for the county and was not acting for Drake. Therefore, no statement that the deputy was acting as agent or attorney of Drake is required. The Texas Family Code requires that a petition filed pursuant to RURESA "shall be verified." *See id.* § 21.11(a) (Vernon Supp.1993). However, neither the Family Code nor RURESA case law indicates the legislature's intent as to the verification requirement. In Texas, as a general rule, a verification upon information and belief is insufficient. *Huddleston v. Western Nat. Bank,* 577 S.W.2d 778, 781 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.).

The Revised Uniform Reciprocal Enforcement Support Act was adopted by Texas in 1987. Thirty-five other states have adopted the Uniform Act, with some jurisdictions enacting various other provi-

sions to supplement their act. Unfortunately, the laws of all states are not uniform. Even though many states enact the same Uniform Act, procedural rules affecting the application of the uniform law may differ.

The Texas legislature has clearly expressed its intent regarding the construction of its Act. "The purposes of this chapter are to improve and extend by reciprocal legislation the enforcement of duties of support." TEX.FAM.CODE ANN. § 21.01. "This chapter shall be so construed as to effect its general purpose to make uniform the law of those states that enact it or a substantially similar statute." Id. § 21.41 (Vernon Supp.1993).

In light of the legislature's expressed intent, should a procedural rule unique to one state be allowed to frustrate the purpose of an entire uniform statutory scheme enacted to improve enforcement of duties of child support? We do not think so. Verification, in this limited circumstance, is one such procedural rule. For the following reasons, the Texas act should be construed so as to recognize the adequacy of the verification.

■ The Texas act requires the statutes to be construed so as to "make uniform the law of those states that enact it." Id. For uniform interpretation, we should consider the laws of sister states—namely California as the petition originated there. California law provides: "A person verifying a pleading need not swear to the truth or his belief in the truth of the matters stated therein but may, instead, assert the truth or his belief in the truth of such matters under penalty of perjury." CAL.CIV.PROC. CODE § 446 (West Supp.1993). The case law of California provides that the object of a verification is to assure good faith in averments or statements of a party to litigation. *Star Motor Imports, Inc. v. Superior Court of Santa Clara County*, 88 Cal.App.3d 201, 151 Cal.Rptr. 721, 723 (1979) (original proceeding). While pleadings may be verified on information and belief, those verified in such a manner "do not serve to establish the facts ... because an affidavit which is to be used as evidence

must be positive, direct and not based upon hearsay." *Id.* at 724.

The verified pleading in this circumstance serves only to fulfill the statutory requirement. The requirement is procedural and has no substantive weight. The pleading, in and of itself, is of no evidentiary value and does not alleviate the petitioner of his burden of coming forward with evidence. It satisfies California's purpose of guaranteeing good faith in the averments in the petition. In contrast, a verified pleading on a sworn account "is evidence of the right to recover on the account." *Golub v. T.E. Nelson*, 441 S.W.2d 220, 221 (Tex.App.—Houston [14th Dist.] 1969, no writ). The only consequence of the filed verified petition is that the defendant must answer. The Uniform Support Petition sworn to on best information and belief and under the penalty of perjury, while of no evidentiary value, is a sufficient petition.

Thus, in this limited situation, we hold that a verification on "best information and belief and subject to the penalty of perjury" is sufficient—the RURESA petition was properly verified. We overrule the points.

## NO EVIDENCE AND INSUFFICIENT EVIDENCE POINTS

Smith contends that the trial court erred in concluding that he is the father of Tamala Drake–Smith, because there was no evidence to support the court's conclusion of law or the findings of fact. He also asserts there is no evidence to support the order requiring him to pay child support.

■ "A party who refuses to submit to paternity testing has the burden of proving that the alleged father is not the father of the child." TEX.FAM.CODE ANN. § 13.06(d) (Vernon Supp.1993). Unfortunately, the statute uses "burden of proving" in such a way as to muddy the distinction between the burden of coming forward with evidence and the burden of persuasion. A careful reading of other sections of the Family Code, however, indicates that the legislature intended to require a petitioner

to retain the burden of coming forward with evidence even though an alleged father refuses to submit to paternity testing: "[I]f any party refuses to submit to court-ordered paternity testing, upon proof sufficient to render a default judgment the court may resolve the question of paternity against that party." *Id.* § 13.02(b)(2) (Vernon Supp.1993). When a respondent refuses to comply with court-ordered paternity testing, the petitioner bears the burden of coming forward with evidence sufficient to support a default judgment; then the respondent bears the burden of persuasion.

Smith refused on two occasions to submit to court-ordered paternity testing. As a result, he assumed the "burden of proving" that he is not the father. *See id.* § 13.-06(d). The Attorney General construed the "shifting" of the burden of proof so as to create a presumption. As a result, the Attorney General failed to introduce any evidence of paternity. Since no evidence of paternity was introduced, there was not sufficient evidence to support a default judgment. *See id.* § 13.02(b)(2). The finding against Smith on the paternity issue is erroneous. We sustain the point relating to no evidence. Therefore, we do not reach the insufficient evidence contention.

■ Generally when a no evidence point is sustained, a reversal and rendition is required. However, "when a no evidence point is sustained, a Court of [Civil] Appeals has broad powers, and should exercise them, to remand for retrial rather than render judgment when the evidence has not been fully developed and it appears that a retrial will better serve the interest of justice." Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 369 (1960), citing *Lanford v. Smith*, 128 Tex. 373, 99 S.W.2d 593, 594 (Tex.1936). This is one such situation.

■ This case concerns a very important interest: the support of a child whose father lives in another state—an interest so strong that thirty-six states have adopted a uniform law to help protect it. We do not believe that the child should be deprived of such an important interest by an incorrect interpretation of a statute which, until now, had not been construed.

We reverse the judgment and remand the case for further proceedings not inconsistent with this opinion.