OPINION OF THE COURT
Richard Rivera, J.
RELEVANT FACTS
The Texas Attorney General commenced this child support/ paternity proceeding in Texas against the respondent who is a New York resident. Pursuant to the Uniform Interstate Family Support Act (UIFSA) (codified in Tex Fam Code Annot § 159.001 et seq. [Vernon 1995]), Texas may commence proceedings against nonresidents in Texas to establish, enforce, or modify child support orders and to determine paternity where, inter alia, (1) the subject child lives in Texas as a result of the acts or directives of the named respondent (Tex Fam Code An-not § 159.201 [5]), and (2) the person to whom the duty of support is owed assigns his/her right to support to Texas, or (3) Texas has an independent claim against the respondent nonresident parent to recover unreimbursed public assistance payments paid to the dependent child (Tex Fam Code Annot *349 § 159.101 [12] [B]). In the vocabulary of the UIFSA statute, Texas is the "initiating state” in this proceeding and New York is the "responding state”. (Tex Fam Code Annot § 159.101 [7], [16].)
In this case, the named petitioner (Demar Neville) lives in Texas with her minor son Jason where they have received public assistance for some time. She claims that respondent George Perry, Jr., a New York resident, is Jason’s father. Ms. Neville has assigned her rights to child support payments to the State of Texas which now seeks a child support judgment. Respondent denies paternity as well as any obligation to pay child support.
The Texas Attorney General accordingly filed this proceeding against respondent in Harris County, Texas, where Ms. Neville and her son live. Although Ms. Neville is named as the petitioner in the caption of the instant petition, there is no dispute that Texas is the real party in interest as her assignee.
The Texas Attorney General filed the petition in Texas on May 24, 1995 and one of its representatives employed at the Attorney General’s Child Support Office verified it. Ms. Neville executed and verified an affidavit (labelled "General Testimony”) which alleged, among other things, that her son Jason is respondent’s dependent, and that she and respondent were never married. Ms. Neville also executed a paternity affidavit alleging respondent’s paternity.
The petition was presented to Judge Millard in Harris, Texas, on June 26, 1995, and he certified that the petition and testimony before him set forth facts from which it may be determined that the respondent owed a duty of support to petitioner’s son. As required by UIFSA, Judge Millard ordered that copies of the petition, the testimony by the petitioner, and the Texas reciprocal support statute be transmitted to the Interstate Central Registry of the Office of Child Support Enforcement in Albany, New York. (Tex Fam Code Annot § 159.304.)
Since the petition alleges that respondent is a Brooklyn resident, the Office of Child Support Enforcement forwarded all these documents to the Kings County Family Court on August 2, 1995. Although New York has not adopted UIFSA, it has enacted the Uniform Support of Dependents Law (USDL) which is substantially similar to UIFSA in all relevant respects. (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 30, at 168; § 37, at 207-211.)
Upon receipt of the required statutory documents from Texas, the Kings County Family Court issued a summons and *350 notice on October 2, 1995 directing respondent to appear on October 20, 1995 in front of a Hearing Examiner. (Domestic Relations Law § 37 [4].) When respondent failed to appear on October 20, 1995, the Hearing Examiner ordered that a new summons be issued and that respondent’s address be verified, and adjourned this matter to December 18, 1995.
On December 18, 1995, the respondent appeared and contested paternity. The Hearing Examiner ordered that blood tests be performed upon Ms. Neville, Jason, and respondent, and respondent thereafter appeared with counsel on the adjourned date (Feb. 23, 1996). The Hearing Examiner informed respondent that the blood test results showed a high statistical probability (99.88%) that he was the child Jason’s father. Respondent nevertheless contested paternity and requested an adjournment for an independent blood test. The Hearing Examiner then referred the matter to me on the issue of paternity.
On February 23, 1996, respondent, his counsel, and an attorney from the Office of the Corporation Counsel representing the State of Texas appeared before me. When respondent requested new blood tests, I adjourned the matter to April 25, 1996 to allow respondent an opportunity to put his request in writing.
On March 14, 1996, respondent filed a notice of motion with supporting affidavits requesting several forms of relief, i.e., an order (1) requiring the parties to submit to new laboratory tests pertinent to the issue of paternity, (2) compelling Ms. Neville to provide information and samples for effectuating the tests, (3) permitting the test to be conducted by any duly qualified physician or laboratory approved by the New York State Commissioner of Health, (4) requiring the laboratory that performed the prior test to provide the new laboratory with certified copies of the test results, (5) preserving respondent’s right to object to the report of the first laboratory, (6) requiring the new laboratory to file an original report of its test with this court, (7) requiring respondent to pay all costs to be incurred in connection with the new test, (8) directing Ms. Neville to submit a verified bill of particulars, (9) requiring her to appear for oral examination in New York State, and (10) requiring her to present herself at any future hearing for the purpose of cross-examination.
On April 25, 1996, I granted respondent’s motion to the extent of (a) directing petitioner to provide a verified bill of particulars in compliance with the demand served except for *351 items numbered 3, 22, 23, and 36, and (b) directing that Ms. Neville, her son, and respondent submit to new blood tests. I denied the motion in all other respects. On May 16, 1996, respondent filed a notice of appeal with regard to my April 25, 1996 order to the Appellate Division for the Second Department. The appeal is still pending.
On June 11, 1996, respondent moved to reargue his April 25, 1996 motion on the ground that this court lacked subject matter jurisdiction over this matter. Specifically, respondent argues that this matter should be dismissed because "the underlying proceeding herein was improper and not in conformity” with New York’s USDL.
Specifically, respondent maintains that the instant petition violated the USDL and must be dismissed because it (1) was not "executed” by the named petitioner (Demar Neville) personally as required by Domestic Relations Law § 37 (1); (2) failed to name the State of Texas (the real party in interest) as petitioner as required by Domestic Relations Law § 36; and (3) was not interposed with the prior involvement of a court in the State of Texas as required by Domestic Relations Law § 37 (1).
In opposing the motion, the State of Texas argues that respondent’s motion should be denied because the lack of subject matter jurisdiction issue was never addressed in the original motion, and, therefore, this is not a motion to reargue. Petitioner also argues that all of the statutory requirements of article 3-A of the Domestic Relations Law were followed in this case, and that the petition is not defective.
Respondent’s reply affirmation indicates that this is properly a motion to reargue because the lack of subject matter jurisdiction issue was raised in his reply affirmation regarding the original motion of April 25, 1996.
Discussion
Although denominated a motion for leave to reargue this court’s order of April 25, 1996, the instant motion is in fact a motion to dismiss based on the court’s alleged lack of subject matter jurisdiction. Since a motion to dismiss pursuant to CPLR 3211 (a) (2) may be brought at any time (CPLR 3211 [e]), respondent’s motion will be deemed a motion to dismiss.
For the reasons that follow, respondent’s motion to dismiss is denied.
Respondent contends that either Ms. Neville or the State of Texas is the real party in interest in this litigation. If it is Ms. *352 Neville, he argues, then this court lacks subject matter jurisdiction over this proceeding because Ms. Neville did not execute or verify the petition. If it is the State of Texas, then the court lacks subject matter jurisdiction because it is not named as petitioner in the caption. Both contentions are without merit.
Since this case- was initiated in Texas (the "initiating state”), the petition, in the first instance, had to comply with Texas law. Unlike the USDL, the Texas Family Code does not define the term "petitioner” in its definitional section. Instead, it uses the term "obligee” to refer to one who has standing to commence support /paternity litigation. Under Texas law, an obligee refers either to an individual to whom a duty of support is or is alleged to be owed or "a state or political subdivision to which the rights under a duty of support * * * have been assigned or that has independent claims based on financial assistance provided to an individual obligee”. (Tex Fam Code Annot § 159.101 [12] [B].)
As already mentioned, Ms. Neville has assigned any rights she may have to child support to the State of Texas, and this is what the petition alleges. Under the Texas Family Code, a "support enforcement agency” may commence a proceeding on behalf of Texas by filing a support/paternity petition. (Tex Fam Code Annot § 159.301 [c].) The term "support enforcement agency” includes public agencies which are authorized to seek enforcement of support orders or laws relating to the duty of support. (Tex Fam Code Annot § 159.101 [20] [A].) The Texas Attorney General is such an agency. (Tex Fam Code Annot § 159.308.) Under these circumstances, Texas was authorized to commence this litigation, Texas and not Ms. Neville is the "petitioner”, and its agent could properly verify the petition. (Smith v Drake, 852 SW2d 82 [Tex 1993].)
The same result would follow applying New York law. Although the USDL’s concept of "petitioner” ("each dependent person for whom support is sought” [Domestic Relations Law § 31 (5)]) would appear to exclude the State of Texas from the category of "petitioners” authorized to prosecute this litigation, a closer look at the USDL indicates otherwise.
Specifically, like the Texas Family Code, the USDL seeks to promote interstate uniformity in the area of child support collection by mandating that the statute be- "interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it.” (Domestic Relations Law § 42.) Moreover, the USDL, again like the Texas Family Code, *353 provides that New York State, its political subdivisions, and official State agencies "shall have the same right to invoke the provisions of this article as the dependent to whom the duty of support is owed” whenever this State furnishes support or is likely to furnish support to dependents living in this State. (Domestic Relations Law § 36.) In other words, the New York State Legislature, like Texas, has authorized this State and its subdivisions to, among other things, sue putative fathers for reimbursement of public assistance payments made to their dependents. Contrary to respondent’s suggestion, it does not appear that New York State has any strong public policy to discourage other States from following the procedure that Texas followed in this litigation and requiring, instead, that the actual dependents (i.e., Ms. Neville and her son) prosecute these types of cases and verify the petitions. Under these circumstances, the mere procedural device of naming Ms. Neville as the petitioner in the caption of the pleadings is not a subject matter jurisdictional defect; rather, it appears to reflect the fact that Ms. Neville authorized the State of Texas to collect the subject child support payments on her behalf. (See, Smith v Drake, supra, at 84.)
Respondent’s third ground for dismissal is similarly without merit. A "Certificate and Order” signed by Judge (or Presiding Officer) Millard on June 26, 1995 is attached to the court file. As mentioned above, this document certifies that the petition and its supporting documents set forth enough facts to establish a cause of action for support against respondent and orders that the support petition be transmitted to Albany, New York. In light of the fact that this Certificate and Order was forwarded together with the petition, respondent incorrectly asserts that there was no prior involvement of any court in the State of Texas. Since the requirements of both the Texas Family Code and the USDL (Domestic Relations Law § 37 [1]) have therefore been satisfied in that respect, the petition is not defective.
Accordingly, respondent’s motion to dismiss for lack of subject matter jurisdiction is denied.